74372, 74373. IN RE G. M. N. & D. M. N. (two cases).
(359 SE2d 217)

BIRDSONG, Chief Judge.
This is an appeal of the termination of parental rights of Rebecca

Nations and David B. Nations, mother and father of G. M. N. and D. M. N.

The older female child, G. M. N., was born in May 1981. In November 1982, when G. M. N. was 19 months old, the parents surrendered G. M. N. for adoption but when those plans failed the child was returned to them the following month. In January 1983, the younger male child, D. M. N., was born. Complaints were received by the Department of Family & Children Services about the parents' alcohol and drug abuse in June 1984. In March 1985, the DFCS obtained temporary custody of G. M. N. and D. M. N. and placed them in foster care. G. M. N. was nearly four at that time; D. M. N. was slightly over two years. A panel review meeting was then held, at which goals were set for the parents to meet before regaining custody of G. M. N. and D. M. N. These were to: establish job stability and home stability, attend mental health counseling, make regular visits with the children, provide child support, and notify the DFCS of the changes in their lives. They were urged to make child support, if only $5 per month just to show a desire to contribute to G. M. N.'s and D. M. N.'s support. There is no evidence that throughout the children's young lives — or indeed before — the parents had enjoyed any job stability (or any job) or any home stability (or any home).

After this March 1985 panel review, and at subsequent reviews each six months, neither parent paid any amount in support. At the time of the termination hearings in November 1986, the father had been incarcerated before March 1985, was released and incarcerated again in June 1985, in part, upon an arson charge.

When the father, David Nations, was not in prison, he drank so heavily, often a fifth of vodka each day, that the mother (who also drank heavily) testified their home, wherever it was, was not a fit place for the children. Both of them evidently were not in prison in May 1985, when there is evidence they held jobs at a bakery for a few days before they quit because David's feet hurt. About that time, also, the mother Rebecca was hospitalized for having overdosed on tranquilizers. Then, she was in jail in June or July 1985, was released in March 1986, and then reincarcerated in August 1986. Originally she had been on probation for forgery, until it was revoked for DUI, "laying drag," and driving with a suspended license. She was in prison at the time of the hearing, but stated that she doubted she would get parole soon.

While not in prison, from March 1986 to August 1986, Rebecca Nations lived with her mother until she was asked to leave because of her drinking, her comings and goings with men friends, and her fussing with other members of her family; she also had lived with a sister-in-law. During this time, her only job was at a mill for two or three weeks, until she was fired for "laying out."

While all of this has been going on, with both parents in and out of jail, G. M. N. and D. M. N. have been in foster care since March 1985. When she was not in jail, the mother cancelled many of her planned visitations because of lack of transportation. The father did visit with the children 14 times in 18 months, in and out of prison. At each panel review it was determined neither parent had made any progress towards meeting the "goals." The mother had failed substantially to attend mental health counseling.

At the termination hearing, both mother and father testified. Evidence was introduced that they loved the children and the children had bonds with the parents.

The mother admitted she drank heavily and that "stupidity" and "irresponsibility" had caused her to fail to establish job or home stability and meet other goals. However, her plans or intentions to improve her situation once she is out of prison, if her parental rights were not terminated, were vague, if it can be said she had any such plans or intentions. The father admitted that the only time he had been out of prison, March 1985 when the children were placed in a foster home until June 1985, he drank heavily, but stated he was attending Alcoholics Anonymous and Bible study in prison. He asked for six more months to improve his situation. *Held:*

### Appeal No. 74372

The father, David Nations, submits one error, in that the trial court erred in terminating his parental rights. He argues that his incarcerations have prevented him from improving his situation, and that he should be allowed six months to prove he can make a stable home for his children.

The trial court did not err, however, in its determination that David Nations had for nearly the entire life of G. M. N. and the whole of D. M. N.'s life not made any progress whatsoever in rehabilitating himself and providing a home for G. M. N. and D. M. N. The excuse offered that he could not provide a home for them because he has been imprisoned most of their lives is not well taken. As for the request that he be allowed six months to improve his life and establish a home, the only plan he offered by which he might do so were vague references to stay with "the Lovells" and work with "the Lovells" until he got on his feet; he offered to get a job, stop drinking and go to counseling.

The trial court did not err, moreover, in finding that G. M. N. and D. M. N. were deprived children, that both father and mother had a history replete with evidence of substance abuse, "extended criminal activity and incarceration since the older child was born, complete instability of job and home, and that the cause of depriva-

tion is likely to continue, in that both parents had had five years to rehabilitate themselves, had spent nearly the whole of the children's lives in prison and while out of prison had heavily abused alcohol, failed to maintain steady employment, and failed to maintain a steady home environment for the children.

We agree with the trial court that the evidence in this case, despite the mild protestations of the father, suggests no prognosis of improvement, and that the continued deprivation of G. M. N. and D. M. N. is likely to cause serious physical, mental, emotional and moral harm to them. There is no evidence the father has ever maintained a stable home. In a case such as this, a plea of "six more months" to improve is without force to overcome the proof of unrelieved detriment already suffered by the children for their entire life, where there is no indication but the promise to suggest hope of improvement. See *In the Interest of T. R. G.*, 162 Ga. App. 177, 179 (290 SE2d 523). The strictures of OCGA § 15-11-81 were met in this case and well supported by "clear and convincing evidence" of continued deprivation and parental unfitness; the finding of the trial court with regard to the father will not be set aside. *In re B. G.*, 180 Ga. App. 502 (349 SE2d 509); see *In re D. C. & J. T. C.*, 176 Ga. App. 30, 32 (335 SE2d 148).

### Appeal No. 74373

1. In her appeal, the mother Rebecca Nations urges the trial court erred in considering the adoptability of the children, erred in applying the "best interest of the children" standard, and erred in terminating the mother's parental rights.

The trial court did not erroneously consider the adoptability of the children. That issue is never a basis for the determination of unfitness of the parents inasmuch as the finding of unfitness must rest upon its own merit. The court is nevertheless authorized to consider, as an element in continued deprivation under § 15-11-81 (a) (4), and as a matter of the child's best interest in its "need for a stable and secure home" under § 15-11-81 (a), the severe detrimental effects of prolonged stay in foster care under the ephemeral hope of change but without the real prospect of parental improvement that would justify such a prolonged stay in foster care; and the court may consider the danger of the child's being "lost in foster care drift," as the DHR puts it, as a factor in the determination of deprivation and continued deprivation. See *In the Interest of T. R. G.*, supra.

2. The trial court did not err in considering the best interests of the children, following a determination of clear and convincing evidence of parental misconduct and inability. OCGA § 15-18-81 (a). Due regard was given to the rights of the parents. See *In the Interest*

*of W. J. J.*, 176 Ga. App. 824, 826 (338 SE2d 54).

3. The disquisition of the evidence with regard to the mother supports clearly and convincingly the trial court's finding of unfitness, deprivation, and continued deprivation under § 15-11-81 and the cases cited therein.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 29, 1987.

*William R. Oliver*, for appellant (case no. 74372).
*M. Keith York*, for appellant (case no. 74373).
*Edward H. Lindsey, Jr.*, for appellee.