77632. IN THE INTEREST OF A. O. S. II.
(377 SE2d 870)

BANKE, Presiding Judge.

This is an appeal from an order terminating the appellant's parental rights with regard to her minor child, A. O. S. II.

The child was just over three years old at the time of the hearing, which took place on February 22, 1988. The appellant, who was 20 years old at the time of the hearing, testified that she believed her stepfather, Doyle Huneycutt, was the child's father. She stated that Mr. Huneycutt (who appeared at the hearing just long enough to deny being the child's father) had, with her mother's knowledge and consent, forced her to engage in sexual relations with him when she was a teenager. The child was named after another man with whom the appellant had been living at the time of the child's birth.

The child required medical attention for a congenital defect known as club feet. In July of 1986, the appellant hitchhiked with the child to the Atlanta area from her home in North Carolina in the company of a man named Donnie Layton, whom she had known only for a week. The appellant maintains that her reason for coming to the Atlanta area was to seek better medical care for the child, but there is no indication in the transcript that she did so. On September 17, 1986, she voluntarily surrendered custody of the child to the Cobb County Department of Family and Children Services (DFCS), stating that she could no longer care for him and wanted to release him for adoption. She signed the necessary release documents at that time but returned within 10 days, announced that she had changed her mind, and reclaimed custody of the child.

On September 30, 1986, the appellant's hitchhiking companion, Layton, brought the child to a local hospital seeking emergency medical attention for him. The child was admitted to the hospital and placed in the protective custody of the DFCS at that time. He has remained in the custody of the DFCS since then, living in foster care.

The DFCS caseworker to whom the case was assigned testified that the appellant had visited the child on only four occasions since he had been in DFCS custody—once in October of 1986, once in December of 1986, and twice in February of 1987, when he was hospital-

ized for surgery on his feet. The caseworker further stated that, with the exception of one $5 payment made in December of 1986, the appellant had contributed no funds towards the support of the child. It was shown that since September of 1986 the appellant had provided the DFCS with 12 different home addresses.

The case was scheduled for an administrative review before a DFCS review panel in April of 1987; however, the appellant telephoned the DFCS office shortly before the scheduled meeting and informed the caseworker that she would not be able to attend because she did not have bus fare to get to Cobb County from Clayton County, where she was evidently living at that time. The review was rescheduled for the following month, but the department was unable to notify the appellant of that meeting date because she had moved without leaving a forwarding address. Consequently, the review was again postponed.

The appellant testified that she had lived with a man in Forest Park, Georgia, from January of 1987 until around March 1st of that year, when she had moved to Mexico. She married a Mr. Gonzalez in Mexico on April 1, 1987; however, she returned to Georgia two days later and wrote to the Mexican authorities seeking an annulment of that marriage. The appellant was pregnant at this time with Gonzalez's child, who was born prematurely later in the year but died soon thereafter due to physical problems which the appellant attributed to beatings she (the appellant) had received at Gonzalez's hands after he learned she was pregnant. The appellant testified that since August of 1987 she had been living in North Carolina with a 53-year-old man named Page, whom she planned to marry. Page was unable to be at the hearing due to a heart problem which made travel inadvisable for him.

It was shown that the appellant had worked at several Waffle House restaurants between late August and mid-November of 1986, but there was no indication that she had held a job since then. She testified, however, that Page had a job which paid him $140 per week and that she had been supplementing that income by earning approximately $20 per week as a babysitter. There was testimony that the DFCS had attempted to locate relatives in Georgia or North Carolina who might be capable of raising the child but had not been successful in this effort. *Held*:

1. The evidence in this case clearly and convincingly demonstrated that throughout the approximately one and one-half years the child had been in DFCS custody, the appellant had been unable or unwilling either to establish a stable home environment in which to raise the child or to secure a source of income through employment from which to provide for the child's basic needs. Cf. *In the Interest of S. G.*, 182 Ga. App. 95, 101 (354 SE2d 640) (1987). The trial court

could reasonably have rejected the appellant's contention that her relationship with Page had cured these deficiencies, given the somewhat fleeting nature of her past relationships with men, the somewhat precarious nature of Page's health, and the fact that she and Page were not married. Based on the totality of the evidence, we hold that the juvenile court was authorized to terminate the appellant's parental rights pursuant to OCGA § 15-11-81 (a) and (b). Accord *In re G. M. N.*, 183 Ga. App. 458, 461 (1) (359 SE2d 217) (1987).

2. We reject the appellant's contention that the trial court failed to comply with subparagraph (4) (C) of OCGA § 15-11-81 (b), which provides, in pertinent part, as follows: "[W]here the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To communicate or to make a bona fide attempt to communicate with the child; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents."

The latter of these three factors was not applicable in this case, since there had been no court ordered plan designed to reunite the child with the appellant. (The DFCS had asked the appellant to agree to such a plan voluntarily, but she had declined to do so.) With respect to the first two factors, the court made specific findings based on the undisputed evidence which reveal a virtual, though not quite total and complete, lack of effort on the appellant's part to communicate with the child or provide for his care and support during the year prior to the filing of the petition. While the court's findings in this regard would not in and of themselves have supported a termination of the appellant's parental rights, neither can it be said that they militated against such a disposition.

*Judgment affirmed. Birdsong and Beasley, JJ., concur.*

DECIDED JANUARY 3, 1989 —
REHEARING DENIED JANUARY 19, 1989.

*Reagan W. Dean*, for appellant.

*Grayson & Freidewald, Robert J. Grayson, Michael J. Bowers, Attorney General, Marion O. Gordon, First Assistant Attorney General, Carol A. Cosgrove, Senior Assistant Attorney General*, for ap-

pellee.