A92A1515. IN THE INTEREST OF J. M., a child.

(426 SE2d 59)

ANDREWS, Judge.

Kathy Foust, the mother of J. M., appeals the termination of her parental rights by the juvenile court.

Termination of parental rights is done based only on clear and convincing evidence. *Blackburn v. Blackburn*, 249 Ga. 689, 694 (292 SE2d 821) (1982). In reviewing such a decision, this court determines whether, after viewing the evidence in the light most favorable to the appellee-Georgia Department of Human Resources, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights had been lost. Id.; *In the Interest of J. L. Y.*, 184 Ga. App. 254, 255 (1) (361 SE2d 246) (1987).

So viewed, the evidence was that the mother, age 22 at the time of the hearing in 1992, had been molested by her father from 1979 until 1982. He pled guilty to the molestation and was sent to prison. She then married McCloud, the father of J. M., in July 1986 when she was 16. She bore C. M., fathered by McCloud on July 19, 1986. She and McCloud separated in February 1987 and she began living with Robertson. A. M., fathered by Robertson while she was still married to McCloud, was born in October 1988.

A. M. died at age six months from asphyxiation. According to the mother, she put the child on a bed asleep where she left her for three hours while she talked on the telephone. When she went to check on her, she found the child on the floor with a plastic bag on her face. During this same period of time, C. M. was taken into custody by the Department of Family & Children Services (DFACS), where she has remained for four of her five years.

McCloud was imprisoned and released on November 25, 1989. Kathy and he went out on the night of his release, got drunk, and slept together, conceiving J. M. who was born on August 2, 1990.

In December 1989, Kathy was raped while living with an uncle who was also severely beaten by the assailant. Although she was supposed to testify against the assailant, she disappeared for a period of time and did not, even though such testimony was one of the goals established by DFACS in their September 1990 plan for reuniting Kathy and C. M. She also failed to accomplish the remaining goals, including supporting and visiting C. M. In February 1992, Kathy voluntarily surrendered her rights to C. M., although she revoked the consent one week later. DFACS has begun proceedings to terminate both parents' rights to C. M.

While she was hospitalized after giving birth to J. M., she was reported by the hospital staff to DFACS due to her lack of nurturing of the newborn. She had no place to live when he was born and had moved in with her abusive father. Four weeks after J. M. was born, Kathy was diagnosed with gonorrhea.

In October 1990, J. M. was taken into custody by DFACS and in November 1990, at the age of two months, J. M. was adjudicated deprived pursuant to OCGA § 15-11-2 (8) (A) and placed by DFACS with a maternal aunt and uncle with whom he has remained and who are interested in adopting him. Kathy and McCloud reconciled until Thanksgiving 1990 when they again separated. Although she told a caseworker in June 1991 she intended to marry Deavers, in October 1991 she married Foust, then 18 years old.

From April 1991, when a panel review was conducted on J. M.'s case and the mother was present, until November 1991, Kathy made no contact with J. M., even on his birthday in August. During the April review, the mother was very angry, attacking, and smelled of alcohol. Neither parent attended the panel review in October 1991, and the father stated during the hearing that he voluntarily relinquished his rights to the child. Only after receiving notice of the termination proceedings did Kathy visit with J. M. During the February 12, 1992 visit, the caseworker left J. M., then one-and-a-half years old, with Kathy and left the room. Within minutes, J. M. was screaming and obviously frightened.

The goals established by Whitfield County DFACS for reunification of Kathy and J. M. were that she and McCloud, with whom she was living in Cobb County at the time of the establishment of the goals, establish and maintain adequate and appropriate housing for the family and notify DFACS of any change in residence; that Kathy obtain mental health counseling; and that both Mr. and Mrs. McCloud secure employment sufficient to support the family.

During this entire period, the mother had only two menial jobs of very short duration. She refused to participate in counseling. She did not notify DFACS of her changes of residence and in fact lost contact with them for long periods of time. Foust, her new husband, was em-

ployed as a cook at $5.20 per hour and the mobile home in which they live was given to them by his father shortly before the hearing to "help them out."

In light of this history, and the 1990 court determination of deprivation by which she is bound, the mother's plea for more time to get her life in order and establish a meaningful relationship with this child cannot overcome the irresistible conclusion that the court's finding must be affirmed. *In the Interest of J. M. H.*, 203 Ga. App. 856 (418 SE2d 128) (1992); *In the Interest of A. W.*, 198 Ga. App. 391 (401 SE2d 560) (1991); *In the Interest of A. L. T.*, 198 Ga. App. 477 (402 SE2d 97) (1991); *In the Interest of J. L. Y.*, supra; *In re G. M. N. & D. M. N.*, 183 Ga. App. 458, 461 (359 SE2d 217) (1987).

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 30, 1992.

*McDonald, Kinnamon & Thames, Connie M. Blaylock*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Margot M. Cairnes, Staff Attorney, Jack O. Partain III, District Attorney, David T. Blackburn*, for appellee.