A92A2077. IN THE INTEREST OF B. P. et al., children.
(427 SE2d 593)

POPE, Chief Judge.

Appellant brings this appeal from an order of the Juvenile Court of Cobb County terminating her parental rights with respect to her two sons, B. P. and R. P. The juvenile court also terminated the parental rights of the children's fathers, but no appeal has been taken by either father from that portion of the juvenile court's order. In her sole enumeration of error on appeal, the mother contends the juvenile court's order was not authorized by the evidence presented during the hearing on the termination petition.

B. P. and R. P. were born March 8, 1989 and March 5, 1988 and were two and three years of age, respectively, at the time of the termi-

nation proceedings. The record shows the Department of Family & Children Services (DFACS) first became involved with the family in September 1989 and that the children were removed from the home in February 1990. The record further shows that while the children were in appellant's care her boyfriend, who lived in the home with appellant and the children, severely physically abused the children and appellant, who testified she was unaware of the abuse, and did nothing to protect her children from the abuse. Testimony was also presented that appellant failed to get prompt medical care for the children's injuries although she should have been aware they were in need of such care, and that she continued to live with the boyfriend after the children were removed from her custody because of the abuse. In March 1990, the juvenile court entered an order, which has never been appealed, finding the children to be deprived. The children were placed in the care of foster parents, and according to testimony presented at the hearing, they have made remarkable physical and emotional improvement during that time.

In December 1990, appellant entered a plea of guilty but mentally retarded to charges of child cruelty and was sentenced to prison. Appellant was released from prison approximately one month prior to the termination hearing. Evidence was presented that the children have no bond with appellant, that during two visits with their mother while she was incarcerated the children treated her as a stranger, and that R. P. had "acted out" for two days after being told he was going to visit his mother. Testimony was also presented that both children had developed a parent-child relationship with their foster parents, who desired to adopt the children.

Although acknowledging her shortcomings as a parent, appellant testified she loved her children. Appellant further testified she had taken some courses in prison to help her learn to care for her children, that upon release from prison she found a job in a sock factory, and that her goal was to become self-sufficient (i.e., get her own apartment and car) and eventually regain custody of her children. She admits the children have not bonded with her, but asserts she has not been provided sufficient opportunity to visit with her children although she requested visitation on several occasions while she was incarcerated.

"The statutory criteria for the termination of parental rights is the two-step procedure of OCGA § 15-11-81 (a). First the court determines whether there is clear and convincing evidence of parental misconduct or inability. Second the court considers whether termination is in the best interest of the child. [Cit.] Parental misconduct is determined by finding: 1) the child is deprived; 2) lack of proper parental care or control is the cause of the deprivation; 3) such deprivation is likely to continue or will not be remedied; 4) continued deprivation is

likely to cause serious physical, mental, emotional or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). Among the factors which may be considered with regard to a child lacking proper parental care or control are: medically verifiable deficiency of the parent's mental or emotional health of such duration or nature as to render the parent unable to provide adequately for the child's needs; conviction of a felony and imprisonment which has a demonstrable negative effect on the quality of the parent-child relation; [and] physical, mental or emotional neglect of the child. OCGA § 15-11-81 (b) (4) (B). . . .

"The standard of appellate review where a parent's rights to his child have been severed is ' "whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." ' *Blackburn v. Blackburn*, 249 Ga. 689, 694 (292 SE2d 821) (1982)." *In the Interest of B. J. H.*, 194 Ga. App. 282 (390 SE2d 427) (1990). "The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review . . . is not met." *In re B. D. C.*, 256 Ga. 511, 513 (350 SE2d 444) (1986).

As to the first criterion, no appeal was taken from the order of the juvenile court entered in March 1990 finding the children to be deprived and thus appellant is bound by that determination. See *In the Interest of J. L. Y.*, 184 Ga. App. 254 (1) (361 SE2d 246) (1987). Likewise, given the physical and emotional state the children were in when they were removed from appellant's care, it is beyond question that continued deprivation is likely to cause serious harm to the children.

Turning to the question of whether appellant's lack of care or control was the cause of the deprivation in this case, appellant argues repeatedly on appeal that there is no evidence *she* ever physically abused the children or ever witnessed the abuse inflicted by her boyfriend. However, the record shows without dispute that in addition to appellant's failure to recognize and protect her children from her violent and abusive boyfriend and to obtain medical care for the injuries he inflicted, appellant's children were generally neglected, uncared for and unsupervised and as a result of lack of care and proper hygiene, they suffered from a plethora of physical ailments endangering their welfare. The record further shows the situation changed little after DFACS intervened, and that appellant did not follow through with a plan entered into with DFACS, an example of which is demonstrated by appellant's failure to obtain shots for the children although at that time she was living a short distance from the medical clinic where the shots were available. " '(P)arental unfitness supporting a termination

of parental rights can be caused " ' "*either* by intentional or *unintentional* misconduct resulting in abuse or neglect of the child or by what is tantamount to physical or mental incapacity to care for the child." ' " (Cit.)' . . . [Cit.]" *In the Interest of B. R. S.*, 198 Ga. App. 561, 562 (1) (402 SE2d 281) (1991).

The final point to be considered in the first step of the two-step process under OCGA § 15-11-81 is whether the deprivation is likely to continue or will not likely be remedied. As to this issue, the juvenile court found appellant to be "incapable of independent living now or in the immediate future. Her inability to hold more that a subsistence job, her intellectual deficits and her past history convince the Court that she will continue to need and seek the financial and emotional support of others, particularly men. The men she relates to are violent and antisocial in their behavior, and would be as harmful to her children as she is. While recognizing that she has taken some positive steps to improve her ability to parent these children, her inability to parent the children is likely to continue and will not be remedied. Her children are of a tender age; they are in need of permanent parents on whom they can rely to safeguard them and provide them with at least the basic necessities of life. [Appellant] cannot do this." The juvenile court then reiterated: "The mother's condition of mental retardation, emotional problems, and dearth of knowledge about parenting skills, and pattern of behavior in choosing dangerous companions insure that she will not be a fit custodian for her [children] in the foreseeable future." "In full compliance with applicable statutory requirements of OCGA § 15-11-81 (b) (4) (A) (iii), the juvenile court found that the deprivation of the child[ren] resulting from appellant's parental unfitness is likely to continue or will not likely be remedied, and there is sufficient clear and convincing evidence to support the findings in this regard. [Cits.]" *In the Interest of B. R. S.*, 198 Ga. App. at 562. See also *In re G. M. N. & D. M. N.*, 183 Ga. App. 458, 461 (359 SE2d 217) (1987).

Turning to the second step, whether the termination is in the children's best interest, one factor to be considered, as the juvenile court noted, is the children's need for a stable and secure home. Moreover, "those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest. Thus, a finding as to whether the termination of parental rights is in the best interest of the child represents, in essence, a finding as to whether the specifics of the parental default that have *otherwise* been found to exist are of such magnitude as to warrant the conclusion that the child himself would be better served by the grant of the petition to terminate. [Cits.] In this regard, our review of the entire record shows that there was likewise sufficient clear and con-

vincing evidence to support the juvenile court's finding that the termination of [appellant's] parental rights . . . would be in [the children's] best interest." *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988). See also *In the Interest of S. K. L.*, 199 Ga. App. 731 (1) (405 SE2d 903) (1991). Based on the foregoing, the order of the juvenile court terminating the parental rights of appellant is affirmed.

*Judgment affirmed. Carley, P. J., and Johnson, J., concur.*

DECIDED FEBRUARY 4, 1993.

*Robert P. Crossett*, for appellant.

*Michael J. Bowers, Attorney General, Margot M. Cairnes, Staff Attorney, Douglas D. Middleton, James K. Knight, Jr., Edwards, Friedewald & Grayson, Robert J. Grayson*, for appellee.