A93A1028, A93A1029. IN THE INTEREST OF W. W. C.,
a child (two cases).
(436 SE2d 685)

ANDREWS, Judge.

The father and mother of W. W. C. each appeal from the termination of their parental rights to W. W. C., who is now three years of age. The appeals are considered together.

"[T]he . . . standard of appellate review . . . where a parent's rights to his child have been severed is 'whether after reviewing the evidence in the light most favorable to the appellee [Department], any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.' " *Blackburn v. Blackburn*, 249 Ga. 689, 694 (292 SE2d 821) (1982). E.g., *In the Interest of B. P.*, 207 Ga. App. 242, 244 (427 SE2d 593) (1993).

So viewed, the evidence showed that the mother, Rebecca Cason, bore the child at age 18 while living with the father, John Cason, age 25, as common-law husband and wife. W. W. C. was placed in the temporary custody of DFACS on August 12, 1990, when he was nine months old. This was done because the Casons were having repeated domestic disputes and, during one such dispute, the child was left unattended while Ms. Cason ran after Mr. Cason who was leaving in his truck. At that time, Ms. Cason held on to the truck in an effort to make him stay until he drove off. The Casons had repeated domestic disputes in the trailer park where they were living, some resulting in police involvement, and eventually they were evicted from that park.

On October 1, 1990, a court order was entered finding that W. W.

C. was a deprived child. OCGA §§ 15-11-2 (8) (A) and 15-11-81 (b) (4) (A) (i). This order was unappealed and was in effect at the time of the termination proceeding and binding on the Casons. *In the Interest of J. M.*, 206 Ga. App. 508, 510 (426 SE2d 59) (1992). After his removal from the Casons in August 1990, the child was placed in one foster home from which he was removed and then placed with the Elders in October 1990, where he remains. After the child's removal, Rebecca and John split up and she moved to Athens. In January 1991, they reunited and he moved to Athens with her while the child remained in Oconee County with the Elders.

In August 1990, psychological testing and examination of Ms. Cason was conducted by Dr. Born. He concluded that her overall cognitive ability was significantly below average, with a full scale IQ of 74. Further, she suffered from low esteem and chronic depression, which require long-term counseling which the doctor recommended for her. Ms. Cason reported sexual abuse by both her natural father and her uncle, with whom she lived for several years. Ms. Cason dropped out of school in the tenth grade and was employed as a waitress for one-and-one-half years, until asked to quit by Mr. Cason in May 1989. Mr. Cason was seen in her eyes as having rescued her from these abusive situations, although he and she were separated at the time of her psychological evaluation. Dr. Born recommended that the child remain in foster care after this evaluation. He concluded that Ms. Cason's ability in the past to maintain employment was an asset, as was her expressed motivation to improve herself and reunite herself with her son, and that "[t]here remain many problems that need to be worked through, however. She is seen as a young woman who, with appropriate guidance and support, has the potential to adequately parent her child in the future.

When the child was initially removed from the parents, DFACS set up a plan to attempt to reunify the family. Although no copy of a plan is included in the record except the one of November 1991, testimony reflects that the initial plan included visitation with the child, conducted with each parent separately, that the parents attend parenting classes and marriage counseling, and that, beginning in June 1991, both parents pay weekly minimal amounts toward W. W. C.'s support. Also, Mr. Cason was to obtain drug screening. While the parents did attend parenting classes, the marriage counselor declined to work with them because he did not feel there was any possibility of improvement in their relationship. Mr. Cason placed the blame for their problems on Ms. Cason and DFACS and Ms. Cason was desperate to please him, although apparently unable to do so. Mr. Cason did not obtain the required screening and only visited the child sporadically. Ms. Cason initially visited regularly, although the child became upset and fussed in her presence. She would play with the child, but

her play was more like that of one child with another rather than that appropriate between parent and child, according to the caseworkers.

At the time of the termination hearing in March 1992, the father had not seen the child since July 1991, even though he had been advised that this was required by the plan which had been incorporated into a court order and further told in the summer of 1991 that DFACS was recommending termination of his parental rights. The July 1991 visit had been conducted in the presence of the psychologist for evaluation purposes. Neither parent made any payments toward the child's support during the 17-month period before termination, although Mr. Cason was employed full-time as a mechanic. Both parents acknowledged that they were having trouble paying their bills. Ms. Cason had become pregnant and delivered their second child in January 1992. She did not visit W. W. C. at all in November or December 1991, or January 1992. She missed three scheduled visits in February 1992, but did visit three times in March, before the hearing.

In July 1991, Dr. Born conducted interviews with Mr. and Ms. Cason separately, then as a couple, and observed their interaction with W. W. C. He described the father's overall demeanor during the session as one of "angry defiance." When W. W. C. was brought into his parents' presence by his foster mother, he did not orient to either parent, although Ms. Cason did attempt to interact with the child. Mr. Cason made no effort to do so. Dr. Born opined that Mr. Cason possessed "very strong oppositional, perhaps anti-social personality features." Mr. Cason would not cooperate with additional evaluation. Dr. Born believed Mr. Cason's prognosis for dealing with the problems in his life and relationship was very poor. At the time of this evaluation, Mr. and Ms. Cason were living together. Dr. Born concluded that Ms. Cason exhibited "strong dependency characteristics to the point that she continues to be obsessed with a relationship with her husband which is horrifically dysfunctional and emotionally abusive to her. Her dependency and self-esteem problems run very deep and her overall prognosis for change is quite poor."

When W. W. C. was placed with the Elders in October 1990, he was very sick, including ear infections and respiratory problems. He could not sleep, was disturbed by loud noises, and was extremely clingy to Mrs. Elder. His day-care teacher observed that, during periods when W. W. C. was seeing his natural parents, he bit other children in the center. This behavior was not observed when there was no parental contact.

1. As to both the father and mother, we begin our analysis with the court's earlier determination that the child was deprived.

"While it is true that past deprivation is not sufficient for termination without a showing of present deprivation, the past conduct of

the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue. [Cits.]" *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (2) (361 SE2d 246) (1987).

(a) As to the father, this initial deprivation was followed by his failure to comply with the court-ordered plan designed to reunite him with his son and his failure to make any monetary contribution to the child's support, although ordered to do so and gainfully employed for more than a year before the hearing. OCGA § 15-11-81 (b) (4) (C). Even in the presence of the child during the July evaluation, he made no effort to interact with W. W. C. and the child showed no sign of recognizing his father.

As to the father, we conclude that any rational factfinder could have found by clear and convincing evidence parental misconduct or inability as provided by OCGA § 15-11-81 (b). E.g., *In the Interest of S. M. S.*, 207 Ga. App. 248, 250 (427 SE2d 598) (1993); *In the Interest of J. M.*, supra at 510.

(b) Likewise, as to the mother, the court below found that she had failed to comply with the plan established to reunite her with the child. Specifically, she failed to visit the child for long periods and to pay the agreed-upon amount toward his support. Further, the court concluded that her focus was on her husband to the exclusion and detriment of the child, even though Mr. Cason was emotionally abusive to her and was unable or unwilling to accept any responsibility for their problems, making counseling to improve their relationship impossible. The mother functioned at a minimal level, reading at below a third-grade level, and, aside from one waitressing job, had not been gainfully employed.

The mother's second enumeration argues as if the mental inadequacies were the sole basis for the court's conclusions regarding the mother. Consideration of her mental condition as one factor was appropriate. *In the Interest of B. J. H.*, 194 Ga. App. 282 (1) (390 SE2d 427) (1990). The order reflects, however, the court's analysis of many factors in addition to her mental abilities, including her continued relationship with an abusive man. See *In the Interest of B. P.*, supra at 245; *In the Interest of S. M. S.*, supra at 250.

Also, the child's emotional detachment from his birth parents and the benefits of a stable environment in the foster home were appropriately considered. *In the Interest of A. L. T.*, 198 Ga. App. 477 (402 SE2d 97) (1991); *In re G. M. N.*, 183 Ga. App. 458, 461 (1) (359 SE2d 217) (1987).

"In light of this history, and the 1990 court determination of deprivation by which she is bound, the mother's plea for more time to get her life in order and establish a meaningful relationship with this child cannot overcome the irresistible conclusion that the court's finding must be affirmed. [Cits.]" *In the Interest of J. M.*, supra at 510.

2. The father also contends that the court improperly failed to make an "exhaustive and thorough search" for a suitable family member to take the child, as required by OCGA § 15-11-90 (a) (1), because the paternal grandmother was willing to take him.

Ms. Nichols of DFACS was asked if there was a suitable family member with whom the child could be placed. She stated that Mr. Cason's mother was the only relative known to DFACS that would be suitable and that she had been approached when the child was initially removed from the Casons in August 1990. She was working and said she could not take the child. Mr. Cason's father was also considered but was unable to take the child.

There is nothing in the record to indicate that the grandmother's circumstances had changed or that she had even contacted the child since his removal from the home. Neither she nor the grandfather testified during the hearing.

The court's order recites that there was no suitable family member available with whom the child could be placed. " 'The trial court had the opportunity to question and observe the parties [and witnesses], and possesses a wide discretion in determining the issues before him, and if the judgment is supported by any evidence and is not clearly erroneous, an appellate court is not authorized to set it aside. (Cits.)' *In re H. B.*, 174 Ga. App. 435 (330 SE2d 173) (1985)." *In the Interest of C. N. G.*, 204 Ga. App. 239, 240 (3) (419 SE2d 42) (1992).

The court's conclusion is supported by evidence and is not clearly erroneous.

*Judgments affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED SEPTEMBER 23, 1993 —
RECONSIDERATION DENIED OCTOBER 12, 1993.

*Robert E. Surrency*, for appellant.

*Michael J. Bowers*, Attorney General, *William C. Joy*, Senior Assistant Attorney General, *Teresa E. Lazzaroni*, Staff Attorney, *John R. Laseter, W. Seaborn Ashley, Jr., P.C., Richard W. Schmidt, Roosevelt Warren*, for appellee.