A98A1720. IN THE INTEREST OF L. H., a child.
(511 SE2d 253)

ANDREWS, Judge.

Pursuant to a termination petition filed on behalf of the Georgia Department of Human Resources, the Juvenile Court of Cobb County issued an order terminating the parental rights of Martha Harrell to her child, L. H., eight months of age at the time of the termination order. Harrell appeals from the termination order.

1. "The decision to terminate parental rights involves a two-step process. First, pursuant to OCGA § 15-11-81 (a), the court must determine 'whether there is present clear and convincing evidence of parental misconduct or inability as provided in subsection (b) of

(§ 15-11-81).' Subsection (b) provides in relevant part that '(t)he court determines parental misconduct or inability by finding that: (i) The child is a deprived child, as such term is defined in Code Section 15-11-2; (ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) Such cause of deprivation is likely to continue or will not likely be remedied; and (iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.' OCGA § 15-11-81 (b) (4) (A). Second, if the court finds there is clear and convincing evidence of such parental misconduct or inability, 'the court shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home.' OCGA § 15-11-81 (a); *In the Interest of J. M. C.*, 201 Ga. App. 173, 174 (410 SE2d 368) (1991). 'The standard of appellate review where a parent's rights to (her) child have been severed is whether after reviewing the evidence in the light most favorable to the appellee (Georgia Department of Human Resources), any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.' (Citations and punctuation omitted.) *In the Interest of A. Q. W.*, 217 Ga. App. 13, 14 (456 SE2d 284) (1995). Moreover, in reviewing the evidence on appeal, this Court does not weigh the evidence or determine the credibility of witnesses; rather, we defer to the Juvenile Court's factfinding and affirm unless the evidence fails to satisfy the appellate standard. Id." *In the Interest of K. W.*, 233 Ga. App. 140, 141 (2) (503 SE2d 394) (1998).

Harrell contends the juvenile court erred in terminating her parental rights under these standards because there was a lack of present clear and convincing evidence of parental misconduct or inability. To the contrary, the juvenile court's termination order was supported by present clear and convincing evidence of parental misconduct or inability under all four requirements set forth in OCGA § 15-11-81 (b) (4) (A) (i), (ii), (iii), and (iv).

As to the requirement that the child be deprived, the juvenile court entered an order on May 13, 1997, finding that the child was deprived under OCGA § 15-11-2 (8) (A) and placing temporary custody of the child with the Cobb County Department of Family & Children Services (DFCS). In the deprivation order, the juvenile court found the following: The child, who was born on March 23, 1997, was three weeks premature and weighed only three pounds, nine ounces at birth. Harrell was unable to properly respond to the child's heart monitor, which was necessitated by the child's breathing problems. During an unannounced visit to Harrell's residence by a DFCS case-

worker, Harrell appeared to be under the influence of alcohol or drugs. Harrell had a long history of drug abuse, had been hospitalized at least eight times in the last seven years for crack cocaine/alcohol abuse, and two of her prior children had tested positive at birth for cocaine and congenital syphilis. Harrell's parental rights to three other children had been terminated in Louisiana, and another child born to her was in foster care in that state. Moreover, Harrell and the child were living with her sister in a trailer with two men. One of the men had recently been convicted of bestiality for having sex with a dog at the trailer, and the other was believed to have convictions for the sale and manufacture of controlled substances. Since no appeal was taken from the deprivation order, Harrell is bound by that determination. *In the Interest of B. P.*, 207 Ga. App. 242, 244 (427 SE2d 593) (1993).

Other evidence supports the juvenile court's determination that the remaining requirements of OCGA § 15-11-81 (b) (4) (A) were established. Harrell testified that she had been using crack cocaine for seven years before leaving Louisiana to move to Georgia in 1996. She testified as to three drug treatment centers she attended for short periods of time. She testified that she has not worked since moving to Georgia and that she was admitted to a drug treatment program called Mothers Making a Change (MMAC) in Georgia in the spring of 1996. At the time of the termination hearing on October 16, 1997, she had not seen her son in foster care in Louisiana in over a year. Despite the fact that Harrell's parental rights to three other children had been terminated, she testified that it was her intention to get all of them back.

Evidence was presented that at the time L. H. was born, Harrell was an outpatient in the MMAC drug treatment program. As an outpatient, she had a positive drug screen in November 1996. After the child was removed from her custody in April 1997, Harrell entered into the residential drug treatment program at MMAC, after which she resided at a MMAC residence and visited with the child once or twice a month. A DFCS caseworker testified that visitation with the child was made available to Harrell at a minimum of every other week, but having left the responsibility with Harrell to initiate the contact to schedule the next visitations, she failed to do so. The caseworker testified that, because of Harrell's failure to do so, DFCS undertook the responsibility of contacting Harrell to schedule the visitations which took place. In regard to these visits, the juvenile court noted that Harrell was a gentle and enthusiastic visitor with the child, and that while at MMAC she had been observed working and behaving appropriately with other children in the nursery in a supervised setting.

While in the MMAC treatment program, a psychological assess-

ment of Harrell was conducted on September 10, 1997, by a behavior specialist for the purpose of determining Harrell's current level of cognitive and adaptive functioning with respect to the child custody issue. The assessment concluded that Harrell's insight and judgment were poor and that she did not appear to be oriented to time or place. Test results showed cognitive functioning at an IQ level of 67 and adaptive behavior results corresponding to an age equivalent of 5.8 years. The adaptive behavior results found that Harrell did not respond well to directives and did not follow through, that she needed reminders about bathing and dressing, and that she did not demonstrate adequate cleaning or cooking skills. The assessment concluded that Harrell was functioning cognitively within the mild range of mental retardation with severe deficits in adaptive functioning.

During the termination hearing, the juvenile court ordered that Harrell submit to a mental evaluation by a licensed psychologist pursuant to OCGA § 15-11-87. The psychologist testified that his testing showed Harrell was mildly mentally retarded with an IQ level of 65. He testified that he gave an additional test to Harrell designed to discriminate among those of low intelligence called the Peabody Picture Vocabulary test in order to confirm and refine his initial observations. This test showed Harrell was functioning at the equivalent age of six years, five months. He testified that in his opinion, Harrell's mental impairment was such that she could not successfully raise a child.

The above evidence supported the juvenile court's determination that the child was deprived along with its further findings pursuant to OCGA § 15-11-81 (b) (4) (A) that the lack of proper parental care and control was the cause of the deprivation, that the cause of the deprivation is likely to continue and is not likely to be remedied, and that the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. In reviewing the evidence, the juvenile court recognized that there was positive evidence showing that Harrell was attempting to address her crack cocaine addiction in the MMAC treatment program, and that she interacted well in supervised visits with the child. Nevertheless, the juvenile court found that other evidence showing mental retardation, severe deficits in adaptive functioning, and a long history of chronic abuse of crack cocaine rendered Harrell unable to parent the child independently and supported termination of her parental rights. "A mental disability that renders a parent incapable of caring for the child is a valid legal basis for termination. [Cits.]" *In the Interest of B. J. H.*, 194 Ga. App. 282, 283 (390 SE2d 427) (1990); *In the Interest of B. P.*, 207 Ga. App. at 245. Moreover, Harrell's long history of crack cocaine addiction and inability to care for her four previous children

were properly considered in the decision to terminate her parental rights. "[T]he past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue. . . . The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (361 SE2d 246) (1987).

The evidence was also sufficient to show under OCGA § 15-11-81 (a) that termination of Harrell's parental rights was in the best interest of the child, considering the physical, mental, emotional, and moral needs of the child and the child's need for a secure and stable home. "[T]hose same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest. Thus, a finding as to whether the termination of parental rights is in the best interest of the child represents, in essence, a finding as to whether the specifics of the parental default that have *otherwise* been found to exist are of such magnitude as to warrant the conclusion that the child himself would be better served by the grant of the petition to terminate. [Cits.] In this regard, our review of the entire record shows that there was likewise sufficient clear and convincing evidence to support the juvenile court's finding that the termination of [Harrell's] parental rights . . . would be in [the child's] best interest." *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (370 SE2d 490) (1988).

2. Harrell contends the juvenile court breached the confidentiality requirements of OCGA § 26-5-17 and 42 USC § 290dd-2 by admitting evidence of records from MMAC relating to her drug treatment. Assuming that the records at issue were covered by the requirements of these sections, we find no error in their admission. The records were admitted pursuant to the order of the juvenile court after a full and fair show-cause hearing. After weighing the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services, the juvenile court found good cause to order disclosure. We find no abuse of discretion in this finding.

3. Harrell claims the juvenile court erred in admitting evidence of the court-ordered mental evaluation conducted by a psychologist pursuant to OCGA § 15-11-87 because this violated her right under OCGA § 24-9-21 (6) to exclude privileged communications between a psychologist and patient as provided in OCGA § 43-39-16. There is no merit to this claim. The psychologist-patient privilege set forth in § 43-39-16 arises only when the patient voluntarily seeks treatment from the psychologist. *In the Interest of R. M.*, 194 Ga. App. 888, 889 (392 SE2d 13) (1990). Since Harrell was evaluated by the psycholo-

gist pursuant to court order and received no treatment, the psychologist was a witness for the court, and communications between Harrell and the psychologist were not privileged pursuant to § 24-9-21 (6) or § 43-39-16. Id.; *Christenson v. State*, 261 Ga. 80, 84 (402 SE2d 41) (1991).

*Judgment affirmed. Beasley, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JANUARY 28, 1999.

*Reagan W. Dean*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Dennis R. Dunn, Senior Assistant Attorneys General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, Sanders B. Deen*, for appellee.