A01A0428. In the Interest of J. W. et al., children.
(549 SE2d 802)

Barnes, Judge.

The mother of two minor children, J. W. and C. W., appeals from the juvenile court's order terminating her parental rights.[1] She contends the trial court erred (1) in its appointment of a Court Appointed Special Advocate ("CASA"); (2) by allowing witnesses to testify about statements made by one of the minors about sexual abuse by the father; (3) by admitting into evidence a psychological report containing hearsay; and (4) by finding that the deprivation of the children was likely to continue. For reasons that follow, we affirm.

1. In her first enumeration of error, the mother contends that the juvenile court erred by allowing a CASA who had already recommended a termination of rights in the deprivation case to continue in that role in the termination case.

The record shows that the court appointed Helen Styles and Patricia Brewer as CASAs for the minor children on March 19, 1999, before the Carroll County Department of Family & Children Services ("DFACS") filed a petition to terminate the mother's parental rights on July 21, 1999. During the hearing on the termination petition, the attorney representing DFACS explained to the court that one of the CASAs was waiting outside the courtroom and wanted to be present during the proceeding if no one planned to call her as a witness. The court and the parties agreed that no one would be calling the CASA as a witness or introducing her report into evidence. Nonetheless, the mother's attorney objected to her continuing as a CASA in the case because she had recommended termination of the mother's parental rights before DFACS filed the termination petition. The mother claims this CASA was therefore an "interested party" to the termination proceeding.

We find no harm resulted from the error alleged. The CASA did not testify in the termination proceeding, her report was not admitted into evidence for consideration by the court, and she was not a party to the termination proceeding initiated by DFACS. Thus, we need not consider whether the trial court erred in allowing her to continue as the CASA.

2. The mother contends the trial court erred by allowing the psychologist, caseworkers, and foster mother to testify about allegations of sexual abuse made by the minor daughter, who was nine years old at the time the allegations were made. According to the mother, there were insufficient indicia of reliability to allow the statements

---

[1] The natural father was a party to the proceedings below but did not appeal.

into evidence under OCGA § 24-3-16, which provides:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

In this case, the minor daughter was available to testify, but no party asked her to do so. In *Gregg v. State*, 201 Ga. App. 238, 240-241 (3) (b) (411 SE2d 65) (1991), we set forth certain factors the trial court should consider when deciding if a child's statements provide sufficient indicia of reliability pursuant to OCGA § 24-3-16. The factors include, but are not limited to:

> (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child. These factors are to be applied neither in mechanical nor mathematical fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness. Nor does the fact that the statement is made days, weeks, or even several months after the alleged incident, in and of itself make the statement unreliable.

(Citations, punctuation and emphasis omitted.) Id. On appeal, we will reverse a trial court's ruling on the admissibility of statements under OCGA § 24-3-16 only if the trial court abused its discretion. *Ingram v. State*, 192 Ga. App. 196, 198-199 (2) (384 SE2d 262) (1989).

The record shows that when the daughter returned from an overnight visit with her aunt, her foster mother noticed discharge in her panties. The foster mother testified that when she asked the

child about it, she told her that she had wet herself. Because the child's outer garments were dry, the foster mother did not believe the child's story and called the aunt, who informed her that the child had not wet herself. When she asked her about what had happened, the child told her that she and a five-year-old female cousin had touched and played with one another. The foster mother then asked where she had learned to do this and whether she had seen other people doing it, perhaps in a movie. The child did not tell her immediately. A couple of days later, the foster mother asked her again

> if she was willing to tell me the truth about those panties, about the fact that, how she had known about doing those kinds of things, if she didn't see a movie. She didn't tell me, 'cause I thought maybe that she had seen a movie at this other home. The first time I asked her she didn't answer me, so I told her, if you saw a movie or you saw something, then you don't need to go back over there if this, you know, if you saw that there; we need to get to the bottom of it. And that's when she finally told me that, she answered my question then and said, I didn't see it on a movie and I didn't see other people doing it . . . , my father did it.

The foster mother testified that this revelation was a "total shock." The foster mother reported the sexual abuse of the child to DFACS, and the child told two caseworkers and a psychologist that she had been sexually abused by her father.

The foster mother further testified that the child told her that she was afraid to visit her parents without DFACS supervision. When the foster mother asked her why she was afraid, the child responded, "I don't think I'll be safe there. I don't want my daddy to do those things to me again. . . . I don't know if my mom would always know if we go in the bathroom, or if she did know that we go to the bathroom if she would do anything about it." According to the child, "her mother had seen it once and hadn't come in the bathroom to stop it."

The mother testified that one time her daughter came out of the bathroom, where she had been with her father, crying, but refused to tell her what had happened. The mother further testified that she did peek in the bathroom door one time when her daughter had been in there an abnormally long period of time with her father but denied seeing anything.

The juvenile court admitted testimony about the child's statements under OCGA § 24-3-16, and we find no abuse of discretion in that decision. The mother's testimony corroborates the statements made by the child to others, and the foster mother never suggested to

the child that her father had abused her. On the contrary, the foster mother was totally shocked by the child's revelation.

3. The mother contends the trial court erred by admitting into evidence psychological evaluations of the children because these evaluations contained hearsay statements. Specifically, the evaluations contained statements made by the children, caseworkers, and foster parents. The record shows that the psychologist testified that her report contained background information obtained from others, but that her opinions and recommendations were based upon statements made by the child and the results of tests she administered.

The statements made by the children were not hearsay. "The history that a patient gives to a psychologist during examination or treatment is not hearsay and is admissible as an exception to the hearsay rule." *In the Interest of C. W. D.*, 232 Ga. App. 200, 209 (4) (501 SE2d 232) (1998). Because the expert testified that his recommendations were not based on the remaining hearsay in his report, and we presume that a trial court in a bench trial considers only admissible evidence (*Corsini v. State*, 238 Ga. App. 383, 385 (2) (519 SE2d 39) (1999)), we find no merit in this enumeration.

4. In her final enumeration of error, the mother contends the trial court erred in terminating her parental rights because DFACS presented insufficient evidence that the deprivation of the children was likely to continue, as the record shows that she complied with the case plan prepared by DFACS.

In reviewing a parent's challenge to the sufficiency of the evidence, we determine whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found by clear and convincing evidence that the parent's rights to custody have been lost. *In the Interest of A. C.*, 230 Ga. App. 395, 396 (1) (496 SE2d 752) (1998). We do not weigh the evidence or determine witness credibility but defer to the juvenile court's factfinding. *In the Interest of L. H.*, 236 Ga. App. 132, 133 (1) (511 SE2d 253) (1999).

The juvenile court issued a thoughtful, 11-page order terminating the parents' rights that separately analyzed the issue of whether the causes of the children's deprivation were likely to continue. The record shows that the mother was a slow learner placed in special education classes who left school in the ninth grade. She also suffers from a debilitating, deteriorating bone disease and cannot work. The children were initially removed from her custody, not because of sexual abuse, but because the family had nowhere to live and the mother refused to enter a women's shelter without her husband. The foster mother testified that when the children were first placed in her care they were ages six and seven, extremely dirty, had head lice, and did not know how to use a toothbrush or wipe themselves after using the bathroom. The record further shows that the mother was

sexually abused by her father as a child and that she placed another child born while she was imprisoned for writing bad checks in the same home with her father to be raised by her mother.

Although it is commendable that the mother complied with the minimal requirements of the DFACS case plan, this fact alone does not overcome the other clear and convincing evidence demonstrating that the deprivation of the children was likely to continue.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JUNE 5, 2001.

*Jerry F. Pittman*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, William F. Collins*, for appellee.

