35292. IN THE INTEREST OF M. A. C. et al.

MARSHALL, Justice.

In this case, the Juvenile Court of Rockdale County terminated the parental rights of the appellant, Kathryn Simms, to her two minor children, M. A. C. and V. L. C. The case is best presented by reviewing the facts giving rise to it, the course of the litigation below, and resolution of the issues presented on appeal.

*Facts*

The Rockdale County Department of Family & Children Services (DFCS) first had contact with the appellant in January of 1975, when she made application for state welfare payments for her two illegitimate minor children, M. A. C. and V. L. C. In February of 1975, the appellant married James Shaw and in December she gave birth to a girl, A. S.[1]

In February of 1976, DFCS received a complaint

---

[1]The custody of A. S. is not at issue in this proceeding.

against the appellant and her husband for possible child abuse and neglect. A case worker for DFCS, who made periodic visits to their home, discovered that their house was unsanitary to the point that maggots were found in the children's dirty diapers. The appellant admitted to severely beating M. A. C. to the point of bruising him. She also admitted to pulling M. A. C.'s hair out and injuring his head by hitting it against the bathtub faucet. In addition, she admitted that Mr. Shaw did "strange things" to the children — specifically, that he would pass gas into a plastic drycleaning bag and put it over the children's heads to punish them. There was also evidence that the appellant consorted with other men while her children were home and her husband was away.

In December of 1976, the appellant left James Shaw and went to Pennsylvania to live with another man. She voluntarily placed the children in foster care in Georgia. Nothing was heard from her for several months. Then, in March of 1977, she contacted DFCS and indicated that she wanted her children back in order to qualify for welfare payments. However, she did not have a job or a place to live, and the children were not returned to her.

In May of 1977, DFCS petitioned the Juvenile Court of Rockdale County for temporary custody of M. A. C. and V. L. C. The appellant was served with the petition, and she appeared at the hearing, although she was not represented by an attorney. The petition was granted by the juvenile court on May 12, 1977.

In the summer of 1977, the appellant returned to Pennsylvania and married James Simms. They began making efforts to re-obtain custody of the children by receiving counseling, establishing a residence, finding jobs, and re-establishing contact with the children. However, they soon abandoned these efforts. The appellant left Simms; she moved to Maryland and began living with another man.

In 1978, the appellant returned to Pennsylvania and moved back in with her second husband, Simms. However, they remained unemployed and subsisted on welfare payments. A Pennsylvania social service worker, who testified at the hearing below, concluded that the appellant and her second husband were unstable, and that the

children would be placed at a very serious risk by being returned to them. The children are currently in a foster home in Georgia, and their conditions, particularly M. A. C.'s, has improved.

### Course of the Litigation below

This petition for termination of parental rights was filed in the Juvenile Court of Rockdale County on February 27, 1979. The petition alleges that the children are residents of Rockdale County; that the mother is a Pennsylvania resident; and that the father of the children is unknown. The petition requests that the parental rights of the mother be terminated on the ground that the children are "deprived and neglected and are without proper parental care and control necessary for their physical, mental and emotional health."[2]

On February 27, 1979, the mother was served by certified mail in Pennsylvania with a copy of the summons and process. She was notified that the termination-of-parental-rights hearing would be held on April 5, 1979. At the hearing on April 5, the appellant, through her attorney, filed an answer to the petition, denying that the Juvenile Court of Rockdale County had personal jurisdiction over her. She filed three other motions, as well: (1) a motion to dismiss the petition on the ground that service on her was accomplished by means of an unconstitutional statute, Code Ann. § 24A-1702 (a) (Ga. L. 1971, p. 728); (2) a motion to vacate the 1977 temporary custody order; and (3) a motion to copy physical evidence in the possession of the state. The hearing on the merits of the petition to terminate parental rights was continued until May 8, 1979.

At the commencement of the hearing on May 8, the juvenile court judge agreed that the temporary custody order was void. However, the juvenile court ruled that it nonetheless had jurisdiction in this termination-of-

---

[2]The petition also requested that the parental rights of the father be terminated, and they were. However, no question concerning termination of the father's parental rights is raised in this appeal.

parental-rights proceeding. Following the hearing, the juvenile court ruled that the appellant actively participated in, and allowed within her control, the physical abuse and inhuman punishment of the children; that the appellant has continued to move from place to place with several men and has not provided any stable or suitable home environment for the rearing and growth of the children; that this is a condition that is likely to continue; and that the children have suffered said physical abuse under the care of the appellant, causing them serious mental, moral, and emotional harm, greatly retarding their education and development of their personalities. The court concluded that the children were "deprived" while in the custody of the appellant and that the conditions and causes of deprivation are likely to continue. Accordingly, the parental rights of the appellant were terminated.

*Appeal*

1. In the first enumeration of error, the appellant argues that the statute by which service of process was accomplished is unconstitutional. This statute, Code Ann. § 24A-1702 (a), provides, "If a party to be served with a summons is within this State and can be found, the summons shall be served upon him personally at least 24 hours before the hearing. If he is within this State and cannot be found, but his address is known or can with reasonable diligence be ascertained, the summons may be served upon him by mailing a copy by registered or certified mail at least five days before the hearing. If he is without this State but he can be found or his address is known, or his whereabouts or address can with reasonable diligence be ascertained, service of the summons may be made either by delivering a copy to him personally or mailing a copy to him by registered or certified mail at least five days before the hearing."

The appellant argues that Code Ann. § 24A-1702 (a) affords insufficient notice of the pendency of the action to a nonresident parent and is, therefore, unconstitutional under Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306 (70 SC 652, 94 LE 865) (1950), which contains the following exegesis of the notice requirement of procedural due process: "An elementary and fundamental

requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Cits.] The notice must be of such nature as reasonably to convey the required information, [Cit.], and it must afford a reasonable time for those interested to make their appearance. [Cits.]" 339 U. S. at p. 314.

Specifically, the appellant argues that by allowing service of a petition to terminate parental rights to be made five days before the hearing, Code Ann. § 24A-1702 (a) does not afford a reasonable time for the nonresident parent to present a defense to the petition. She also argues that by allowing service by registered or certified mail without a return-receipt requirement, Code Ann. § 24A-1702 (a) does not provide notice reasonably calculated to apprise the nonresident parent of the pendency of the action. In addition, she advances the argument that Code Ann. § 24A-1702 (a) constitutes an equal protection violation insofar as it accords differential treatment to residents and nonresidents.

We find no equal-protection violation in the framework of Code Ann. § 24A-1702 (a). This statute provides for service by registered or certified mail within five days of the hearing upon state residents and out-of-state residents whose address is known, but who cannot with reasonable effort be personally served. The statute provides for personal service upon state and out-of-state residents who can be found. Thus, similarly situated residents and nonresidents are accorded equal treatment. "It is only in cases where laws are applied differently to different persons under the same or similar circumstances that the equal protection of the law is denied." *Baugh v. City of LaGrange,* 161 Ga. 80, 81 (2a) (130 SE 69) (1925).

The termination-of-parental-rights hearing was not held in this case until some 70 days after service of the petition upon the appellant. The appellant's attorney admitted at the hearing below that the appellant received ample notice. Therefore, the appellant lacks standing to attack the constitutionality of the statute on the ground

that service of a petition under Code Ann. § 24A-1702 (a) within only five days of the hearing would be untimely.

" 'Before a statute can be attacked by anyone on the ground of its unconstitutionality, he must show that its enforcement is an infringement upon his right of person or property, and that such infringement results from the unconstitutional feature of the statute upon which he bases his attack. [Cits.] He must show that the alleged unconstitutional feature of the statute injures him, and so operates as to deprive him of rights protected by the Constitution of this State or by the Constitution of the United States, or by both. *Cooper v. Rollins,* 152 Ga. 588 (110 SE 726, 20 ALR 1105); *Harrell v. Cane Growers Co-op. Assn.,* 160 Ga. 30, 72 (126 SE 531); 19 RCL 109; and Mallinckrodt Chemical Works v. Missouri, 238 U.S. 41, 54 (35 SC 671, 59 LE 1192), in which the Supreme Court of the United States held: "As has been often pointed out, one who seeks to set aside a state statute as repugnant to the Federal Constitution must show that he is within the class with respect to whom the act is unconstitutional, and that the alleged unconstitutional feature injures him." ' *South Ga. Natural Gas Co. v. Ga. Public Service Commission,* 214 Ga. 174 (1) (104 SE2d 97)." *Bryant v. Prior Tire Co.,* 230 Ga. 137, 138 (196 SE2d 14) (1973). Accord, *Collins v. Williams,* 237 Ga. 576 (229 SE2d 388) (1976).

For the same reason, we reject the appellant's argument that service by registered or certified mail without a return-receipt requirement was not reasonably calculated to apprise her of the pendency of the action. The appellant, in fact, received service of process, and this belies her contention that this method of service does not provide a "reasonable probability" that she would receive actual notice. See Massengill v. Campbell, 391 F2d 233 (5th Cir. 1968).

2. In the second enumeration of error, the appellant argues that the Juvenile Court of Rockdale County lacked both venue and jurisdiction in this proceeding to terminate her parental rights. The appellant asserts two reasons in support of this argument.

First, she argues that the temporary-custody order

under which DFCS was holding the children at the time the petition in this case was filed is void.[3] Thus, the appellant maintains that she retained "legal custody" of the children, and, therefore, their residence was that of hers in Pennsylvania. See *Sanchez v. Walker County Dept. of Family &c. Services,* 138 Ga. App. 49 (2) (225 SE2d 441) (1976). In this manner, the appellant argues that venue in Rockdale County was not proper under Code Ann. § 24A-1101 (Ga. L. 1971, pp. 709, 721), which provides, in part: "A proceeding under this Code [Title 24A] may be commenced in the county in which the child resides . . ."[4]

We find it unnecessary to rule whether the children were "residents" of Rockdale County, Georgia, or Pennsylvania, within the meaning of Code Ann. § 24A-1101. For, even if the children were not "residents" of Rockdale County within the meaning of Code Ann. § 24A-1101 at the time the termination-of-parental-rights petition was filed, venue in Rockdale County was still

---

[3]The primary reason urged by the appellant in support of her argument that the temporary custody order is void is that it does not contain findings of fact and conclusions of law. See *Coleman v. Coleman,* 238 Ga. 183 (232 SE2d 57) (1977); *Crook v. Dept. of Human Resources,* 137 Ga. App. 817 (224 SE2d 806) (1976). It is the appellee's position that since the temporary custody order has not been appealed or set aside, it is res judicata between the parties and, therefore, validly places legal custody of the children in the appellee.

[4]Code Ann. § 24A-1101 was held to be unconstitutional in *Quire v. Clayton County Dept. of Family &c. Services,* 242 Ga. 85 (249 SE2d 538) (1978) insofar as it purports to allow any proceeding under Code Title 24A to be brought in the county in which the child resides, since the resident parents have a state constitutional right to be sued in the county of their residence. In this case, the defendant is a nonresident. Therefore, the venue provisions of the State Constitution pertaining to state residents have no application here.

We also find *Matthews v. Matthews,* 238 Ga. 201 (232 SE2d 76) (1977) to be inapplicable here. In *Matthews,* we

proper under other provisions of Code Ann. § 24A-1101, which state that, "If deprivation is alleged, the proceeding may be brought in the county in which the child is present when it is commenced . . ."

Secondly, the appellant argues that the exercise of in personam jurisdiction over her by the Juvenile Court of Rockdale County, Georgia, deprived her of due process of law under Kulko v. Superior Court, 436 U. S. 84 (98 SC 1690, 56 LE2d 132) (1978). Kulko was preceded by Shaffer v. Heitner, 433 U. S. 186 (97 SC 2569, 53 LE2d 683) (1977), wherein the Supreme Court of the United States held that the constitutionality of the assertion of quasi in rem jurisdiction by state courts must be adjudged by the "minimum contacts" and "fair play and substantial justice" standards of International Shoe Co. v. Washington, 326 U. S. 310 (66 SC 154, 90 LE 95) (1945), rather than by the more lenient Pennoyer v. Neff, 95 U. S. 714 (24 LE 565) (1877), standard of mere presence of a res within the territorial jurisdiction of the state.

The Supreme Court's application of the International Shoe standard in Kulko resulted in its holding that it was unreasonable for a California court to assert in personam jurisdiction over a nonresident divorced husband in a suit by a resident divorced wife to obtain full custody of their children. While living together as husband and wife, the parties had resided in New York; after the divorce, the wife moved to California, but the husband continued to reside in New York, and his contacts with California were practically nonexistent. The California Supreme Court upheld the exercise of in personam jurisdiction over him on the ground that, by consenting to one of his children moving to California to live with her mother, he obtained a financial benefit in being relieved of having to support her in New York.

---

held that, as a matter of public policy, the courts of this state would not entertain change-of-custody disputes where the non-custodial parent, by illegally withholding custody of the children, had enticed the custodial parent to come to this state for the purpose of relitigating child custody. We do not find this to be the case here.

Thus, the California court reasoned that the defendant had committed an act outside of the State of California whereby he had "purposely availed himself of the benefits and protections of the laws of California," making it "reasonable" under McGee v. International Life Ins. Co., 355 U. S. 220 (78 SC 199, 2 LE2d 223) (1957), for the courts of California to exercise in personam jurisdiction over him.[5]

The United States Supreme Court disagreed, holding that the defendant had not engaged in a commercial transaction, within the contemplation of McGee, whereby he received a benefit in California so as to make fair the assertion of that state's in personam jurisdiction over him; nor, noted the court, had the defendant committed a wrongful act outside of the State of California causing injury in the state. In arriving at this result, the Supreme Court noted that, "Like any standard that requires a determination of 'reasonableness,' the 'minimum contacts' tests of International Shoe is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present. Hanson v. Denckla, 357 U.S. 235, 246 (78 SC 1228, 1235, 2 LE2d 1283) (1958)." 98 SC at p. 1697.

We hold that in this case, the appellant has sufficient "minimum contacts" with this state so as to make it "reasonable" for the courts of this state to exercise in personam jurisdiction over her in this termination-of-parental-rights proceeding. The children have been continuously present in this state since 1975, when the appellant, as a resident of the State of Georgia, obtained welfare payments from the state to aid her in her

---

[5]As we read Kulko v. Superior Court, 138 Cal. Rptr. 586 (564 P2d 353) (1977), the controversy before the California Supreme Court was whether the California trial court had jurisdiction over the divorced husband for the purpose of adjudicating the wife's child-support claim. No contention was made in the California Supreme Court that the trial court lacked jurisdiction to determine child custody.

support of the children. In 1976, she voluntarily relinquished custody of the children to an agency of the state, and the children have been, in effect, wards of the state since that time. During the pendency of this proceeding, the children have been in foster care here. Consequently, we conclude that the appellant had purposely availed herself of the benefit and protection of Georgia laws so as to make it fair and reasonable for her to defend this termination-of-parental-rights action in the courts of this state.[6]

3. In the third enumeration of error, the appellant argues that the petition to terminate parental rights did not comply with the requirements of Code Ann. §§ 24A-3202 and 24A-3203 in that the petition did not contain the following notice: "An order terminating the parental rights of a parent terminates all his rights and obligations with respect to the child and of the child to him arising from the parental relationship, including rights of inheritance." Code Ann. § 24A-3203. The petition must state clearly that an order for termination of parental rights is requested and that the effect thereof will be as stated in the first sentence of section 24A-3203. Code Ann. § 24A-3202 (a).

Contrary to the appellant's contentions, we find that the petition did contain this notice. In Paragraph 7 of the petition, it is stated that, "Petitioner requests all parental rights of the mother be terminated including the rights

---

[6]Under Section 74-508 of the Uniform Child Custody Jurisdiction Act (Code Ch. 74-5; Ga. L. 1978, pp. 258, 259), a court of this state which has jurisdiction to entertain a child custody dispute may decline to exercise its jurisdiction on the ground that it is an inconvenient forum and that a court of another state is a more appropriate forum. Under Section 74-509, if the petitioner has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise its jurisdiction. It was noted in *Sweeney v. Sweeney*, 241 Ga. 372 (245 SE2d 648) (1978), that the concerns expressed in *Matthews v. Matthews*, 241 Ga. 374, supra, are addressed in the Uniform Act.

and obligations with respect to the children from the mother and of the children to the mother arising from the parental relationship, including the right of inheritance . . ."

4. In the fourth enumeration of error, the appellant argues that the juvenile court judge erred in considering a report prepared by DFCS in that this report contained hearsay evidence. We agree that the trial court erred in considering the report. See *Camp v. Camp,* 213 Ga. 65 (97 SE2d 125) (1957) and cits. However, we do not agree that the trial judge's consideration of the report constitutes reversible error. Here, the case worker preparing the report testified at the hearing, and the evidence introduced at the hearing, not considering the report, was sufficient to support the findings and conclusions of the juvenile court judge. When a trial judge considers both admissible and inadmissible evidence, it is presumed that he separates the wheat from the chaff; and his judgment will not be reversed where there is legal evidence to support it. *Moss v. Moss,* 135 Ga. App. 401 (218 SE2d 93) (1975). As in *In the Interest of J.C.,* 242 Ga. 737 (251 SE2d 299) (1978), we find that the juvenile court judge's consideration of the case worker's report does not constitute reversible error.

5. In the final enumeration of error, the appellant argues that the evidence was insufficient to support the juvenile court's decision to terminate her parental rights. We disagree.

Under Code Ann. § 24A-3201 (a) (2), "The court by order may terminate the parental rights of a parent with respect to his child if . . . the child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason therefor the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm . . ." See, e.g., *Roberson v. Dept. of Human Resources,* 148 Ga. App. 626 (252 SE2d 57) (1979); *Leyva v. Brooks,* 145 Ga. App. 619 (1) (244 SE2d 119) (1978). "The thread running through [cases wherein parental rights were terminated on the ground that the child or children were deprived] not only manifests moral unfitness, physical abuse and abandonment by the parent

or parents but also reflects a condition of frequent moves from home to home thereby lessening the probability of development of a meaningful parent-child relationship, as well as probable deprivation of a sound environment founded in love and nurture. These cases found a substantial *danger of a child suffering emotional harm* as well as physical, mental, or moral harm." *Elrod v. Hall County Dept. of Family &c. Services,* 136 Ga. App. 251, 255 (220 SE2d 726) (1975).

We believe that the evidence authorized the juvenile court in concluding that, while in the appellant's custody, the children were deprived and the causes of deprivation are likely to continue. Accordingly, we hold that the juvenile court did not abuse its discretion in terminating the parental rights of the appellant. The following cases are illustrative of similar factual situations in which a termination of parental rights has been deemed justifiable: *Kilgore v. Dept. of Human Resources,* 151 Ga. App. 19 (1979); *Childers v. Clayton County Dept. of Family &c. Services,* 147 Ga. App. 825 (250 SE2d 564) (1978); *Madray v. Dept. of Human Resources,* 146 Ga. App. 762 (247 SE2d 579) (1978); *Blair v. Division of Family &c. Services,* 135 Ga. App. 312 (217 SE2d 457) (1975); *Spence v. Levi,* 133 Ga. App. 581 (211 SE2d 622) (1974).

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 18, 1979 — DECIDED OCTOBER 24, 1979 — REHEARING DENIED NOVEMBER 6, 1979.

*Robert A. Izzo, Mary Margaret Oliver, Roy Sobelson, Mary Carden, John Cromartie, Jr.,* for appellant.

*James A. Henderson, Arthur K. Bolton, Attorney General, Carol Atha Cosgrove, Assistant Attorney General,* for appellees.