A98A2376. IN THE INTEREST OF D. W. et al., children.
(59909 SE2d 345)

BLACKBURN, Judge.

Appellant, the biological mother of D. W., L. P. W., L. S. W., R. W., and L. R. W., appeals the juvenile court's termination of her parental rights, claiming, through seven enumerations of error, that the evidence was insufficient to support the termination.[1] As there is clear and convincing evidence which supports the termination, we affirm the juvenile court's decision.

On appeal, we must determine "whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met." (Citation and punctuation omitted.) *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

On January 23, 1992, the juvenile court found appellant's children to be deprived on the basis that appellant failed to provide necessary medical treatment and schooling for them. The children were placed in the custody of the Department of Family & Children Services (DFACS), and a 30-day case plan was developed. The goals for reunification incorporated into this plan, among others, included: (1) appellant would improve her parenting knowledge and skills; (2) appellant would develop stable living conditions; and (3) appellant would maintain contact with the children. Over the six years following the removal of her children, appellant took only a single parenting class, never held a job or established her own home, never provided any monetary support for her children, and visited her children only sporadically.[2] Furthermore, from 1993 through 1997, appellant did not attend a single Citizen's Panel Review regarding her reunification plan. On November 19, 1997, DFACS petitioned the juvenile court to terminate appellant's rights. On February 27, 1998, the juvenile court granted this petition.

"Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is 'present clear and convincing evidence of parental misconduct or inability.' OCGA § 15-11-81 (a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue

---

[1] The putative father of the children does not appeal the termination of his rights.

[2] Appellant visited her children only 13 times from 1992 through 1997.

or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). . . . In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child." *In the Interest of V. S.*, 230 Ga. App. 26, 27 (495 SE2d 142) (1997).

There is no issue as to whether the appellant's children were deprived. The record contains previous orders of the juvenile court which include findings of such deprivation, and, in the termination proceedings, the court took judicial notice of such orders. See *In the Interest of J. L. Y.*, 184 Ga. App. 254 (1) (361 SE2d 246) (1987). In addition, there was evidence that the appellant had failed to communicate with her children in a "meaningful, supportive, parental manner" for more than a year prior to the termination petition. See OCGA § 15-11-81 (b) (4) (C).[3]

The evidence supported the juvenile court's determination that appellant's inability to adequately care for her children was the cause of their deprivation. The children were initially taken into DFACS' custody because appellant, who held no job and could not provide stable living conditions, failed to provide them with appropriate medical care and schooling. However, in DFACS' custody, the children were healthy and made significant educational improvement. As such, there was clear and convincing evidence that the children's deprivation originated from appellant's neglectful childrearing.

The evidence also shows that the children's deprivation would be likely to continue in appellant's care. "Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. The court was entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue [if] the children were reunited with their mother." (Citation and punctuation omitted.) *In the Interest of R. N.*, supra at 204 (1) (c). Here, the appellant had six years to attempt to make changes in her life to regain custody of her children. Instead, appellant did almost nothing.[4]

A finding that the children would likely be harmed by the continued deprivation is supported by the record. Again, despite the fact that her children were removed from her custody, appellant's attempts to achieve reunification were almost nonexistent. In light of

---

[3] In fact, in 1995, 1996, and 1997 combined, appellant visited her children only two times.

[4] When asked what she did on a daily basis, appellant replied: "I don't do anything. I just stay in the house. That's about all I do, stay in and visit my sister."

appellant's history of neglect, her minimal efforts to attain reunification, and her failure to comply with DFACS' case plan, the evidence provides clear and convincing proof that reuniting these children with appellant would cause harm to them.

Finally, the record supports a finding that the best interests of the children are served by termination of appellant's rights. The same factors which show appellant's inability to rear her children may also provide evidence that termination of her rights would be in the best interests of her children. *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988). Although appellant now claims that she will find an apartment and get a job, she has not held a job since 1980, and the outcome of this case remains the same. " '[T]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.' " *In the Interest of D. I. W.*, 215 Ga. App. 644, 646 (1) (451 SE2d 804) (1994).

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 13, 1998.

*Chandler R. Bridges*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Dennis R. Dunn, Senior Assistant Attorneys General, Shalen A. Sgrosso, Assistant Attorney General, Nardone & Read, Robert G. Nardone*, for appellee.