512 S.E.2d 652 (1999)
236 Ga. App. 504
In the Interest of M.L.P. et al., children.
No. A99A0105.
Court of Appeals of Georgia.
February 17, 1999.
*654 Ham, Jenkins, Wilson & Wangerin, Kevin A. Wangerin, Forsyth, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, W. Ashley Hawkins, for appellee.
*653 ELDRIDGE, Judge.
Appellant Cheryl Penamon appeals the trial court's August 1998 order terminating her parental rights to M.L.P. and M.D.P. We affirm.
"The standard of review of a juvenile court's decision to terminate parental rights is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citations and punctuation omitted.) In the Interest of E.C., 225 Ga.App. 12, 13, 482 S.E.2d 522 (1997). See also Blackburn v. Blackburn, 249 Ga. 689, 694, 292 S.E.2d 821 (1982); In the Interest of T.B.R., 224 Ga.App. 470, 472, 480 S.E.2d 901 (1997). The appellate court should defer to the lower court as the trier of fact unless the clear and convincing standard is not met. Id.; In the Interest of B.P., 207 Ga.App. 242, 244, 427 S.E.2d 593 (1993).
Viewed in this light, the evidence showed that M.L.P. was born in January 1991 and her half-sister, M.D.P., was born in March *655 1992.[1] The children have been in the custody of the Georgia Department of Family & Children's Services ("DFCS") since 1993. At that time, DFCS determined that the children were deprived because the appellant left the children alone in an apartment for long periods of time and because the appellant failed to get the children immunized. The finding of deprivation was not challenged by the appellant.
Since August 1993, a Citizens Review Panel repeatedly has reviewed appellant's file and made recommendations in the form of reunification plans. These plans consistently required the appellant to do three things: (1) pursue counseling to assist her in becoming a "responsible adult and adequate caretaker for her children"; (2) visit the children on a regular basis; and (3) stabilize and maintain her employment, home, and financial matters. These plans became orders of the court. See OCGA § 15-11-41(b)-(e). The appellant participated in most of the panel discussions and repeatedly promised to comply with the court's requirements for reunification.
In August 1996, the Citizens Review Panel recommended that the appellant's parental rights be terminated. The State filed a petition on October 3, 1996. The trial court held a hearing on December 18, 1996; after hearing some evidence, the trial court issued a continuance until January 7, 1997. Subsequent hearings were held on January 7, January 15, February 14, and April 2, 1997.
During the February hearing, the trial court noted that the Citizens Review Panel was scheduled to meet on February 27, 1997, to review the appellant's case. The trial court noted that the appellant might be able to "convince the panel that there's light at the end of the tunnel." The appellant's counsel remarked to the court that the appellant would like another opportunity to discuss the case with the panel. However, after meeting with the appellant, the panel again recommended termination of her parental rights. The State tendered the panel's review and recommendation into evidence during the April hearing, and it was admitted without objection. However, the appellant objected to the admission of attachments to the record, such as a visitation schedule, asserting that they were hearsay, unauthenticated, and cumulative. The trial court overruled the objection, finding that the documents at issue were prepared for the panel, which discussed them with the appellant during the February review, and were "part and parcel" with the panel's report.
The trial court issued a termination order on April 9, 1997. The appellant appealed the order, and this Court reversed. See In the Interest of M.L.P., 231 Ga.App. 223, 498 S.E.2d 786 (1998). After finding that the trial court erroneously relied on hearsay, i.e., the Citizens Review Panel's findings of fact, in reaching its factual conclusions about the case, this Court remanded the case for issuance of a new order based on "competent" evidence in the record. Id. at 225, 498 S.E.2d 786.
Following such remand, the trial court scheduled a hearing on June 3, 1998, to review the case in light of this Court's remittitur. The appellant failed to appear at this hearing. The trial court then issued an order on August 5, 1998, stating that it had "carefully reviewed the evidence of record in light of the Court of Appeals' ruling." The order enumerated specific factual findings and conclusions of law in compliance with OCGA § 15-11-81 and, again, terminated the appellant's parental rights. She appeals from this order. Held:
1. In three enumerations of error, the appellant challenges the sufficiency of the evidence, asserting that the evidence failed to demonstrate the appellant's present parental misconduct or inability that would justify termination. We disagree.
"In considering the termination of parental rights, the court shall first determine whether there is present clear and convincing evidence of parental misconduct or inability.... If there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest *656 of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-81(a).
(a) The first factor in the determination of parental misconduct or inability is consideration of whether the children are deprived. OCGA § 15-11-81(b)(4)(A)(i); see also OCGA § 15-11-2(8)(A). In this case, the children were determined to be deprived in August 1993 and were removed from the appellant's care. The appellant did not challenge such determination, and therefore, she is bound by that finding. In the Interest of E.C., supra at 15, 482 S.E.2d 522; In the Interest of T.B.R., supra at 473(1)(a), 480 S.E.2d 901; In the Interest of B.P., supra at 244, 427 S.E.2d 593.
(b) In addressing the second factor, the trial court must consider whether there has been a lack of proper parental care or control which caused the deprivation. OCGA § 15-11-81(b)(4)(A)(ii). Such lack of proper care may be established by showing, inter alia, "past physical, mental, or emotional neglect of the child or of another child by the parent." OCGA § 15-11-81(b)(4)(B)(v).
In this case, the children's half-brother, C. P., was removed from the appellant's custody in 1993 after he was discovered, at three months of age, sitting alone in the appellant's apartment. C.P. initially was placed in his father's home, and the Citizens Review Panel established a reunification plan with the appellant. The appellant has not regained custody of C.P., whose present status is unclear from the record. This evidence supports the trial court's determination that the children at issue in this case are deprived as a result of the appellant's lack of parental care or control.
Further, "where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To communicate or to make a bona fide attempt to communicate with the child ...; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents." (Emphasis supplied.) OCGA § 15-11-81(b)(4)(C).
In this case, the appellant lost custody of the children in 1993. The trial court heard evidence from two DFCS employees who had supervised the appellant's case during 1996 and from a counselor who had worked with the appellant since 1994. These witnesses had personal knowledge of the requirements of the court-ordered reunification plans and the appellant's failure to comply with such plan. Further, the State tendered the reunification plans, covering the period from August 1993 through August 1996, into evidence without objection.
Julie Mahaffey, the DFCS caseworker who worked with the appellant from January through December 1996, testified that, during this period, the appellant moved four times; she did not complete counseling; and her visitation with the children was "sporadic." Mahaffey testified that, in order to assist the appellant in overcoming transportation problems that allegedly were interfering with visitation, DFCS assigned a "parent aid" to the appellant. However, the appellant still missed some scheduled visits. Mahaffey also stated that the appellant did not cooperate with the children's daycare center rules and, as a result, could no longer visit the children there.
The counselor assigned to the appellant since 1993 testified that the appellant did not attend counseling sessions regularly during 1996; the counselor noted that appellant attended four of eleven scheduled sessions between August 1996 and February 1997.
In response, the appellant asserted during the January 7, 1997 hearing that she had "changed" and recently had begun to address some of the requirements of the court-ordered case plans. According to the appellant's testimony, she moved to an apartment in Griffin, Georgia, in August 1996, and she *657 found both a full-time and part-time job. She testified that she was engaged to be married, and "I'm no longer getting into things that I used to get into. I no longer drink. I no longer club. I go to work. I see about my child that I have at home with me. He's in daycare and the daycare can speak for themselves about how well I tend to him."[2]
However, appellant also admitted that she had failed to pay any child support for M.L.P. and M.D.P. since 1995, even though she had been ordered by the court to pay $25 per week. Although she claimed to have provided Christmas and birthday gifts for the children, she did not do so until after the termination petition had been filed. The appellant also admitted that her fiancé was a convicted felon, having been convicted of selling cocaine; he is on probation until 2004. In addition, she admitted that her current Griffin neighborhood was "pretty rough" and that she intended to move after getting married.
Further, during the April hearing, the appellant testified that she had been fired from her full-time job and was presently unable to work because she injured her back in January 1997; the status of her part-time job was unclear. She stated that, "Some days I don't even get out of bed. [The neighbors] come and get my son. That's how bad my back be hurting me." When questioned about missed visitation appointments with her children between December 1996 and February 1997, the appellant admitted that she failed to appear for a few visitations; she explained that she relied on a Medicaid van to transport her to visitation with her daughters and that the van was sometimes unavailable.
Such evidence supports the trial court's finding that "[t]he [appellant] does not have the financial means to support the children and has, despite Court orders requiring her to do so, failed to pay child support sufficient to provide for even the bare necessities of the children." See OCGA § 15-11-81(b)(4)(C)(ii). Further, the evidence shows that the appellant consistently failed to comply with the court-ordered reunification plans, i.e., maintain stable employment or adequate housing, to visit the children regularly, or to attend counseling consistently. The trial court properly concluded that such failure established grounds for termination under OCGA § 15-11-81(b)(4)(C)(iii). See also OCGA § 15-11-81(b)(4)(A)(ii).
(c) Once the first two factors are satisfied, the trial court must then decide if the cause of the deprivation is likely to continue and, if so, if the continued deprivation "will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-81(b)(4)(A)(iii), (iv).
"In addition to evidence of present parental misconduct or inability, evidence of past conduct may be considered in determining whether the deprivation would be likely to continue.... Appellant asserts that her past history is irrelevant to her present fitness as a parent. We strongly disagree. Her history of child [neglect] is clearly relevant when appellant, aware of her past failings, continues to ignore her responsibility to financially support her children. This is clearly present conduct from which a factfinder can infer that appellant, in spite of a recent, albeit questionable, change of heart, is not prepared to support her children in the future." (Citations and punctuation omitted.) In the Interest of T.B.R., supra at 474-475(1)(c), 480 S.E.2d 901. "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) In the Interest of R.N., 224 Ga. App. 202, 205(2), 480 S.E.2d 243 (1997).
Although the appellant contends that she has recently attempted to comply with the reunification plan, pointing to evidence that she attended a few counseling sessions in Griffin and maintained a home in Griffin for six months, such efforts fall "very short of negating years of ... harmful neglect" by the appellant. In the Interest of T.B.R., supra at 475(1)(c), 480 S.E.2d 901. "While the mother's efforts to improve herself ... *658 are good[,] the trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court." (Citations and punctuation omitted.) Id.; In the Interest of M.N.L., 221 Ga.App. 123, 124, 470 S.E.2d 753 (1996).
In making such determination, the trial court could not have been more clear. In its August 1998 order, the trial court made the following finding: "In evaluating the [appellant's] demeanor and testimony at trial, coupled with her repeated failures to satisfactorily comply with the above-referenced court-ordered reunification orders, the Court is convinced that she continues to lack the requisite level of maturity and commitment needed to be a mother and caretaker to these children. She offers absolutely no regret or apology for her failures' having resulted in her 2 children's being in foster care for over 4 years.... The mother's claims of having `changed' and of now being prepared to resume motherly responsibilities for these 2 children are not credible. The Court views these contentions as nothing more than promises to change for the better if she should secure return of her children. Throughout this Court's involvement with this mother and her children over several years, the mother has repeatedly promised such improvement by participating in and consenting to the implementation of several reunification plans with which she utterly failed to comply." Further, the trial court concluded that "the [appellant] is presently unfit and unable to resume her custodial responsibilities for these children in a manner consistent with and in furtherance of the health and well-being of these children."
The evidence presented supports a finding by the trial court that it is very likely that the deprivation of these children will continue and that the children will be harmed thereby.
(d) Once the determination has been made that the lack of parental control has caused the child to be deprived, the trial court must consider "whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-81(a).
In making such determination, "those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest. Thus, a finding as to whether the termination of parental rights is in the best interest of the child represents, in essence, a finding as to whether the specifics of the parental default that have otherwise been found to exist are of such magnitude as to warrant the conclusion that the child ... would be better served by the grant of the petition to terminate." (Citations and punctuation omitted; emphasis in original.) In the Interest of B.P., supra at 245, 427 S.E.2d 593. See also In the Interest of R.N., supra at 205(2), 480 S.E.2d 243.
"The termination of parental rights is a severe measure. However, a termination hearing seeks above all else the welfare of the child. In determining how the interest of the child is best served, the juvenile court is vested with a broad discretion which will not be controlled in the absence of manifest abuse." (Citations and punctuation omitted.) In the Interest of A.A.G., 146 Ga. App. 534, 535(2), 246 S.E.2d 739 (1978). See also Powell v. Dept. of Human Resources, 147 Ga.App. 251, 248 S.E.2d 533 (1978).
After reviewing the trial court's order and the entire record, including transcripts of the 1996-1997 hearings, this Court finds that the trial court did not abuse its discretion in terminating the appellant's parental rights.
2. Although the appellant challenged on appeal the trial court's alleged reliance upon the factual findings of the Citizens Review Panel, such assertion was waived for failure to object to the evidence at trial.
Further, under OCGA § 15-11-33(d), "all information helpful in determining [whether the children are deprived], including oral and written reports, may be received by the court and relied upon to the extent of its probative valué even though not otherwise *659 competent in the hearing on the petition." Accordingly, there was no error in the trial court's consideration of the panel reports in reaching his decision regarding the State's termination petition.
However, even if portions of the panel's reports were inadmissible as hearsay which did not qualify under the business records exception, "the Georgia Supreme Court has held that a trial court's consideration of hearsay contained in such [reports] will not constitute reversible error where the evidence introduced at the hearing, not considering the report[s], was sufficient to support the findings and conclusions of the juvenile court judge." (Citation and punctuation omitted.) In the Interest of J.T.S., 185 Ga. App. 772, 774, 365 S.E.2d 550 (1988). "When a trial judge considers both admissible and inadmissible evidence, it is presumed that he separates the wheat from the chaff; and his judgment will not be reversed where there is legal evidence to support it. [Cit.]" In the Interest of M.A.C., 244 Ga. 645, 655(4), 261 S.E.2d 590 (1979). "There was ample evidence in the present case to support the juvenile court judge's finding of continued deprivation even without reliance on the hearsay records. It follows that the admission of the reports in question does not require reversal of the judge's decision." In the Interest of J.T.S., supra at 774, 365 S.E.2d 550.
3. The appellant also challenges the trial court's "reliance" upon the recommendations of the children's guardian ad litem, contending that the guardian ad litem never filed a written report with the court. However, the guardian ad litem filed a response to the State's termination petition, which response recommended termination of the appellant's parental rights, and the guardian ad litem reiterated such recommendation during the April 1997 hearing. In its comprehensive twelve-page order, the trial court made a single, one-paragraph reference to the guardian ad litem's recommendation. For the same reasons as discussed in Division 2, supra, the trial court's consideration of such recommendation, if error, was harmless.
4. The appellant's assertion that the trial court's August 5, 1998 order is unsupported by the evidence because it is based upon evidence that was 16 months old is without merit. The trial court originally heard evidence in this case between December 1996 and April 1997, and issued an order terminating the appellant's parental rights on April 11, 1997. That order was appealed by the appellant and was reversed by this Court. This Court's opinion remanded the case back to the trial court with instructions for "issuance of an order based on competent evidence given at the hearing and in compliance with OCGA § 15-11-81." (Emphasis supplied.) In the Interest of M.L.P., supra at 225, 498 S.E.2d 786. The order did not require the trial court to conduct additional hearings, but simply directed the trial court to reconsider the competent evidence already presented before issuing an order in this case.[3] The issue before the trial court in August 1998 had not changed from that decided in the April 1997 order, i.e., whether there was sufficient evidence presented during the hearings to terminate the appellant's parental rights. The trial court correctly determined that there was sufficient clear and convincing evidence to support the termination. There was no error.
Judgment affirmed.
POPE, P.J., and SMITH, J., concur.
NOTES
[1] The father of M.L.P. is deceased. The father of M.D.P. is unknown; his parental rights were also terminated following his notice of the proceedings by publication.
[2] The appellant's youngest son, the half-brother to the children at issue in this case, continues to live with her.
[3] This Court notes that, following the remittitur of this case to the trial court, the trial court did, in fact, set a date for a hearing in which to review the evidence in light of this Court's decision. However, the appellant failed to appear for the hearing, and the trial court based its determination solely on the evidence in the record as established prior to the original 1997 appeal.