A01A0426. IN THE INTEREST OF C. N. S. et al., children.
(545 SE2d 633)

ELDRIDGE, Judge.

After the children, C. N. S. and D. H. G., were removed from her custody, the appellant biological mother was repeatedly incarcerated for shoplifting and revocation of probation. C. N. S. and D. H. G., ages nine and four at the time of the termination hearing, were placed in the temporary legal custody of the Catoosa County Department of Family & Children Services ("DFCS") in 1996. In 1998, they were first adjudicated as deprived based upon the appellant's status as imprisoned and the whereabouts of the fathers of the children as unknown.[1] At that time, the juvenile court also found as fact that there "was no home to return the children to" and, with the appellant's consent, extended temporary custody in DFCS until its further order. Approximately a year later, the juvenile court further extended custody of the children in DFCS for one year and, in May 2000, acting upon DFCS's termination petition filed in 1997, ordered appellant's parental rights terminated.

On appeal, appellant contends that insufficient evidence was presented to support the juvenile court's finding that the termination of her parental rights was proper upon clear and convincing evidence of parental misconduct and as in the best interests of her children. In this regard, the appellant argues that the juvenile court erred in admitting as hearsay a report of her positive drug screen and the DFCS citizens review panel reports in her case. Further, she argues that in the absence of the alleged hearsay, the evidence of her prison time would not support the termination of her parental rights. Finding her claims of error to be without merit, we affirm. *Held*:

Parental rights are terminated under OCGA § 15-11-94[2] in two steps.

First, the court determines whether there is clear and con-

---

[1] In May 1998, the juvenile court terminated the parental rights of the children's fathers for nonsupport and abandonment.
[2] This Code section was formerly OCGA § 15-11-81.

vincing evidence of parental misconduct or inability. Second, the court considers whether termination is in the best interest of the child. The standard for appellate review of a termination of parental rights is whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights had been lost.

(Citations and punctuation omitted.) *In the Interest of D. I. W.*, 215 Ga. App. 644, 645 (1) (451 SE2d 804) (1994).

Parental misconduct or inability is established upon finding that the child is deprived; that the lack of proper parental care or control is the cause of the deprivation; that the child's deprivation is likely to continue or will not be remedied; and that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A); *In the Interest of D. I. W.*, supra. A parent's conviction of a felony and resulting imprisonment which have a demonstrable effect on the parent-child relationship are among the factors relevant to establishing the lack of proper parental control over a child. OCGA § 15-11-94 (b) (4) (B) (iii).

Appellant concedes that the status of the children as deprived has been established by her failure to appeal such determination. See *In the Interest of B. P.*, 207 Ga. App. 242, 244 (427 SE2d 593) (1993) (unappealed deprivation determination binding on appeal). Further, the record shows that appellant was incarcerated three times for shoplifting[3] and twice further incarcerated upon revocation of probation after the children were placed in the custody of DFCS. At the termination hearing, the appellant conceded that the time she had spent in jail left her knowing C. N. S. only in the context of the first four years of his life and not knowing D. H. G. at all. Under these circumstances, the appellant cannot be deemed to have provided proper parenting for the children. Compare *In the Interest of D. A. P.*, 234 Ga. App. 257, 259 (2) (506 SE2d 438) (1998). "Although incarceration alone need not always compel the termination of parental rights, it can support such a ruling when sufficient aggravating circumstances are present. [Cit.]" Id. An incarcerated parent's history for repeated incarceration as a recidivist constitutes further evidence relevant to "determining whether [a] child *presently* is without the proper parental care and control of the offending parent, and that such is likely to continue." (Citation omitted; emphasis in original.) *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992). We conclude that appellant's near continuous incarceration, an incarceration still in progress at the time of the hearing below, constitutes an aggravating

---

[3] The second and third of these convictions were for felony shoplifting; the first was a misdemeanor.

circumstance in this case. Such circumstance particularly bears on that testimony in the record establishing that in the event the appellant's parental rights were not terminated, the children would likely remain deprived with significant adverse effects.[4]

Because the children were not in the custody of the appellant at the time her parental rights were terminated, the juvenile court was also required to determine whether the appellant failed to comply with OCGA § 15-11-94 (b) (4) (C) (i)-(iii) — that is, to consider whether the appellant, without justification for one year or longer before the filing of the petition for termination of parental rights, failed significantly:

(i) [t]o develop and maintain a parental bond with the [children] in a meaningful, supportive, [parental] manner; (ii) [t]o provide for the care and support of the [children] as required by law or judicial decree; and (iii) [t]o comply with a court ordered plan designed to reunite the [children] with the [appellant].

OCGA § 15-11-94 (b) (4) (C) (i)-(iii).

It is undisputed that the appellant consistently wrote the children from prison. Likewise, while in prison she successfully completed numerous parenting and substance abuse prevention courses. Nevertheless, the record shows that the children entered DFCS custody based upon appellant's neglect; that the appellant was unable to provide the children a safe and stable home because of an inability to avoid criminal conduct resulting in repeated periods of incarceration; that in the brief interludes between prison terms, the appellant failed to provide the children such a home; that the appellant failed to disclose her final shoplifting offense before her last DFCS citizens review panel, evidencing deceitfulness and denial; and that she paid no court-ordered child support, although conceding an ability to do so to a caseworker.

At the hearing, the appellant also testified that she was then serving a six- to ten-year sentence for felony shoplifting and that her sentence would not be complete until June 2001. The appellant further testified that she might be released earlier; that she could remain drug free; that she could avoid other criminal conduct; and that she could care for the children after her release. However, these claims amount to no more than conjecture. " '[T]he decision as to a

---

[4] A caseworker testified that C. N. S. evidenced his deprivation by bed-wetting, nightmares, tantrums, and tendencies to urinate on bathroom walls and play in his feces. As to D. H. G., the caseworker indicated that the full effects of his deprivation would likely never be known in that he was "so little" and had been in foster care all his life.

child's future must rest on more than positive promises which are contrary to negative past fact.' [Cit.]" *In the Interest of D. I. W.*, supra at 646 (1).

Upon considering the best interests of the children, the juvenile court may further consider their need for stability and the harmful effects of extended foster care. *In the Interest of A. L. B.*, 245 Ga. App. 776, 779 (538 SE2d 557) (2000). Based upon the appellant's past conduct as a recidivist, the juvenile court was authorized to find the deprivation of the children would not likely be remedied in the future and that it was in their best interests that her parental rights be terminated.

Neither is the sufficiency of the evidence diminished by appellant's hearsay claims. Although we conclude that the juvenile court erred in admitting the November 1998 drug screen about which the appellant complains as original evidence for lack of a proper foundation,[5] see *Tucker v. State*, 249 Ga. 323, 329 (5) (290 SE2d 97) (1982) ("The report of an expert expressing the expert's opinion as to the result of a scientific experiment is not admissible under [OCGA § 24-3-2] to explain conduct or motive where the foundation for admission of that opinion is not properly laid."), such error was harmless. The record reveals that the juvenile court admitted the drug screen to explain caseworker conduct alone;[6] such conduct was otherwise amply explained of record. See *Tarleton v. Griffin Fed. Sav. Bank*, 202 Ga. App. 454, 455 (2) (b) (415 SE2d 4) (1992) ("An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful. (Cits.)").

Finally, the juvenile court properly admitted the DFCS citizens review panel reports. "[A]ll information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition." OCGA § 15-11-56 (c);[7] *In the Interest of C. G. B.*, 242 Ga. App. 705, 711 (5) (531 SE2d 107) (2000), citing *In the Interest of M. A. C.*, 244 Ga. 645, 655 (4) (261 SE2d 590) (1979). To the degree any such information contained hearsay, the courts are presumed to have disregarded it. *In the Interest of C. G. B.*, supra; *In the Interest of M. L. P.*, 236 Ga. App. 504, 510-511 (2) (512 SE2d 652) (1999).

Upon reviewing the evidence in the light most favorable to the appellant, any rational trier of fact could find by clear and convincing evidence that her parental rights were properly forfeited.

---

[5] The State failed to call the testing toxicologist as a witness.

[6] In admitting the drug screen report, the juvenile court ruled, "I'll allow it in to show conduct. [The drug screen report] is admitted for that reason only."

[7] This Code section was formerly OCGA § 15-11-33 (d).

*Judgment affirmed. Johnson, P. J., and Miller, J., concur. Andrews, P. J., disqualified.*

DECIDED FEBRUARY 15, 2001 —

Clifton M. Patty, Jr., Christopher C. Young, for appellant.
*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Shalen S. Nelson, Assistant Attorney General, Russell & Mingledorff, John D. Russell, Steven M. Ellis, for appellee.*