570 S.E.2d 79 (2002)
257 Ga. App. 1
In the Interest of O.J., a child.
No. A02A1221.
Court of Appeals of Georgia.
August 8, 2002.
*80 Vernita L. Lee, Dawson, for appellant.
Thurbert E. Baker, Atty. Gen., William C. Joy, Sr. Asst. Atty. Gen., Shalen S. Nelson, *81 Laura W. Hyman, Asst. Attys. Gen., William D. Edwards, Valdosta, Charles R. Reddick, Homerville, for appellee.
MILLER, Judge.
A single mother's chronic schizophrenia divorced her from reality and hindered her ability to care for her five-year-old daughter. With the daughter in tow, she once stubbornly remained homeless despite offers of help, and on another occasion she knowingly allowed a man who had molested her daughter to continue contacting the child. The mother could not care for herself or her child but relied on other adults to supervise and assist. Based on expert testimony, the juvenile court terminated the mother's parental rights. We affirm, holding that the evidence sufficed to sustain the judgment.
Construed in favor of the juvenile court's ruling, the evidence showed that in October 1998, the mother with her daughter O.J. stubbornly remained homeless despite agency offers of free housing. The mother was placed in a hospital, where she was diagnosed as suffering from chronic paranoid schizophrenia. This illness caused her to be paranoid and delusional with loose associations and aggressive behaviors and to have frequent auditory and visual hallucinations. She was nonfunctional and a recluse. Based on a finding of deprivation, the juvenile court placed the child in Department of Family & Children Services (DFACS) custody.
After the mother received treatment and stabilized, her daughter was returned to her in April 1999. Within a few months, a male friend of the mother molested the daughter, which the daughter reported to the mother. The mother, who had ceased her medication and was hearing multiple voices, refused to acknowledge the problem. She continued to allow the molester back in her home and to allow him to have access to and contact with the child. Due to her failure to protect her child, the court ordered the child back into foster care.
Citing the mother's mental deficiency, DFACS petitioned to terminate her parental rights. After a hearing, the juvenile court granted the petition on this ground. The mother appeals, arguing that (1) the evidence was insufficient, (2) the court erred in admitting hearsay testimony, and (3) the court erred in not appointing her an attorney for the deprivation hearings. We hold that the evidence was sufficient, that the court could admit the hearsay testimony, and that her failure to request an attorney was fatal to her last enumeration. Accordingly, we affirm.
1. To terminate parental rights, a court must find clear and convincing evidence of parental misconduct or inability and must also find that termination is in the best interest of the child. OCGA § 15-11-94(a); see In the Interest of D.W., 235 Ga.App. 281-282, 509 S.E.2d 345 (1998). Parental misconduct or inability is proven by evidence showing (i) the child is deprived, (ii) lack of proper parental care or control is the cause of the deprivation, (iii) the cause of the deprivation is likely to continue, and (iv) continued deprivation is likely to cause serious harm to the child. OCGA § 15-11-94(b)(4)(A)(i)-(iv); D.W., supra, 235 Ga.App. at 281-282, 509 S.E.2d 345.
(a) In her first enumeration of error, the mother claims the evidence did not support findings under subdivision (i)present deprivation, and subdivision (iii)likely to continue. She does not challenge the evidence supporting subdivision (ii)lack of parental care caused deprivation, and subdivision (iv)serious harm likely if deprivation continued.
(i) Deprivation. Prior to the termination hearing, the court on multiple occasions found the child deprived in court orders arising out of deprivation hearings. These orders were admitted at the termination hearing, and the court took judicial notice of them also. See D.W., supra, 235 Ga.App. at 282, 509 S.E.2d 345. Since the mother did not appeal any of these orders, she is bound by the findings of deprivation, and the first factor is satisfied. In the Interest of E.C., 225 Ga.App. 12, 14-15, 482 S.E.2d 522 (1997).
Moreover, the evidence showed that the mother's mental disorder had left the child homeless and exposed to continued molestation, *82 and that the mother could not care for the child. Deprivation was shown.
(ii) Likely to Continue. The mother claims that her regular visits to the child and her compliance with the reunification plans mandated a finding in her favor that the cause of the deprivation was not likely to continue. She ignores, however, that she continues to suffer from a permanent case of chronic paranoid schizophrenia. This medically verifiable deficiency of her mental condition (see OCGA § 15-11-94(b)(4)(B)(i)) has disabled her from employment, subjected her daughter to homelessness and molestation exposure, required other adults to handle the shopping, finances, and transportation for her, and caused her to be so passive and nonfunctional as to lack any parenting skills. Similar mental deficiencies have led to the termination of parental rights. See, e.g., In the Interest of A.G., 253 Ga.App. 88, 90(1)(b), 558 S.E.2d 62 (2001) (psychological disorders resulted in poor motivation); In the Interest of J.M.D., 249 Ga.App. 457, 460, 548 S.E.2d 454 (2001) (untreated mental condition made mother unable to parent adequately); In the Interest of A.M.R., 230 Ga.App. 133, 135(1)(a), 495 S.E.2d 615 (1998) (mental condition and erratic behavior showed parental inability); In the Interest of J.M.G., 214 Ga. App. 738, 740(5), 448 S.E.2d 785 (1994) (schizoid personality caused lack of motivation and inability to care for child alone).
Evidence showed that this condition was likely to continue. The mother's repeated refusal to take her medication exacerbated the symptoms of her mental disorder, which disorder was a permanent condition. The court could also consider her past conduct in determining the likelihood that such would continue and could discount her recent efforts to reform. In the Interest of J.M.C., 201 Ga.App. 173, 174-175, 410 S.E.2d 368 (1991); see D.W., supra, 235 Ga.App. at 282, 509 S.E.2d 345.
(b) Evidence supported the finding that termination was in the child's best interest. The same factors which show the mother's inability to rear her daughter may also provide evidence that termination of her rights would be in the best interest of the child. D.W., supra, 235 Ga.App. at 283, 509 S.E.2d 345. The court could also consider the child's need for a stable and secure home, the severe detrimental effects of a prolonged stay in foster care under the ephemeral hope of change, and the danger of the child's being lost in foster care drift. In re G.M.N., 183 Ga.App. 458, 461(1), 359 S.E.2d 217 (1987); see In the Interest of M.C.L., 251 Ga.App. 132, 136(2), 553 S.E.2d 647 (2001).
2. The mother complains that one caseworker's testimony relied in part on case notes generated prior to the caseworker's involvement in the case. The mother contends that this was hearsay and inadmissible.
The case began in October 1998 when the mother was hospitalized for her schizophrenia. Physicians testified as to this. The caseworker who testified became personally involved six months later in April 1999 and worked on the case for the next two and one-half years through the October 2001 trial hearing. She testified as to events occurring during the entire three-year period, relying on case notes as to the first six months of activity.
"[A]ll information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition." (Emphasis supplied.) OCGA § 15-11-56(c); accord In the Interest of C.N.S., 248 Ga.App. 84, 87, 545 S.E.2d 633 (2001); see In the Interest of A.T.H., 248 Ga.App. 570, 574(2), 547 S.E.2d 299 (2001); In the Interest of M.L.P., 236 Ga.App. 504, 510-511(2), 512 S.E.2d 652 (1999). "To the degree any such information contained hearsay, the courts are presumed to have disregarded it. [Cits.]" C.N.S., supra, 248 Ga.App. at 87, 545 S.E.2d 633; see In the Interest of M.A.C., 244 Ga. 645, 655(4), 261 S.E.2d 590 (1979) (it is presumed the trial judge "separates the wheat from the chaff.... [Cit.]"). Here, the court expressly said it was disregarding hearsay.
There is no reversible error where the evidence introduced (not including the hearsay) is sufficient to support the findings of the trial judge. In the Interest of A.A., 252 Ga.App. 167, 168(1), 555 S.E.2d 827 *83 (2001); see M.A.C., supra, 244 Ga. at 655(4), 261 S.E.2d 590. As set forth above, the evidence (not including the caseworker's pre-April 1999 testimony) supported the findings necessary to terminate the mother's parental rights. Accordingly, there was no reversible error.
3. Although represented by appointed counsel at the termination hearing, the mother claims that the court erred in not appointing her an attorney for the deprivation hearings. Right to appointed counsel, however, is available "upon the request of [the indigent party]." OCGA § 15-11-6(b). Thus, "[a] request is required before an appointment is made. [Cit.]" A.M.R., supra, 230 Ga.App. at 137(2), 495 S.E.2d 615.
Here the mother was notified of each of the deprivation hearings by a summons that specifically informed her, in the following language, that she was entitled to appointed counsel upon request: "If you want a lawyer but are not able to hire a lawyer without undue financial hardship, you may ask for a lawyer to be appointed to represent you. The Court would inquire into your financial circumstances and if the Court finds you to be financially unable to hire a lawyer, then a lawyer will be appointed to represent you."
The mother never requested an attorney, and therefore there was no error in failing to appoint her counsel. See A.M.R., supra, 230 Ga.App. at 136-137(2), 495 S.E.2d 615. Indeed, only at the State's request did the court appoint her counsel for the termination hearing. Following this appointment, two additional custody extension orders (each finding the child was deprived) were entered with no objection from the mother's counsel. Since even with counsel the mother did not object to two unappealed orders finding deprivation, she can show no harm from the previous deprivation hearings at which she did not ask for representation. We discern no reversible error.
Judgment affirmed.
BLACKBURN, C.J., and JOHNSON, P.J., concur.